# Commonwealth of Pennsylvania *v.* Philip Kolb, Julius Kolb and Geo. Kolb, Appellants.

*Criminal law—Pleading—Indictment—Duplicity.*

The objection of duplicity in an indictment arises only when unconnected acts, each of which is a distinct offense, are charged in the same count. When the several acts charged are merely aspects or stages of one transaction, though each, when alone present, is an offense, it is not duplicity to charge them all.

*Pure food act—Offer to sell and sale—Practice, C. P.*

An offer to sell an imitation of butter is itself an offense but it is also a stage of a contract of sale, and when this contract becomes complete the offer merges in the sale; hence both may be charged in one count.

*Sale of oleomargarine—Sufficient count.*

To bring a case within the prohibition of the act of 1895, it is sufficient if any article of food which is adulterated within the meaning of the act be sold or offered for sale, and the sale of an article which is an imitation is a violation of the act though the article itself is neither adulterated nor deleterious to health.

*Indictment—Sufficiency—Pure food act.*

An indictment is sufficient which describes the article sold as an imitation of butter sold as and for and under the name of pure butter, without designating either as an article of food; the court will presume after verdict that it was sold as an article of food.

*Criminal law—Agency or employment not a defense.*

A person who commits an unlawful act is not relieved from the penalty by reason of having been employed to do so by another.

*Evidence—Good character when not applicable.*

The habitual sale of imitation butter as butter being admitted, the good character of the defendants can have no possible bearing on this point, nor create doubt as to the conceded sale, hence the omission of the court to instruct the jury as to the effect of evidence of good character is not reversible error.

Argued Oct. 5, 1899.    Appeal, No. 88, Oct. T., 1899, by defendants, from judgment of Q. S. Schuylkill Co., Nov. Sess., 1898, No. 1853, on verdict of guilty.    Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and BEEBER, JJ.    Affirmed.    Opinion by SMITH, J.

Indictment for selling oleomargarine.    Before LYONS, P. J., of the 41st judicial district, specially presiding.

The first count charges that the three defendants jointly, on November 1, 1898, and on divers other days prior thereto . . . . wilfully, knowingly and unlawfully did sell and offer for sale, and then and there had in their possession with intent to sell, a certain oleaginous substance and compound of the same, the said oleaginous substance and compound of the same not being then and there produced from pure, unadulterated milk and cream from the same, and being then and there an imitation of unadulterated butter, with the intent then and there to sell to divers persons, as an article of food, in violation of the health laws of said commonwealth, etc.

The second count charges that the three defendants jointly, wilfully, knowingly and unlawfully did sell and offer for sale, and then and there had in their possession, with intent to sell as an article of food, a certain oleaginous substance and compound of the same, the said oleaginous substance and compound of the same then and there being an imitation of butter.

And the said Philip Kolb, Julius Kolb and George Kolb, did, then and there, unlawfully and knowingly, sell and expose for sale the same as and for and under the name of pure butter, in violation of the laws of health, etc.

The defendants' motion to quash the indictment was overruled and they pleaded "not guilty."

It appears from the evidence that Philip Kolb had been engaged in the general store business, and that the other two defendants, Julius and George, are his sons and were employed by him as clerks.   On August 21, 1898, George Kolb sold to R. M. Simmers, the pure food agent, a small quantity of an article which was sold as oleomargarine, and on August 30, Julius sold to R. M. Simmers another quantity of the same article.   There was evidence tending to show the habitual sale of the article in question as butter which was admitted by defendants on cross-examination.

[At the trial the commonwealth offered to show that the article sold was not butter produced from unadulterated milk or cream.   This offer was objected to and objection overruled.] [2]

Defendants submitted among others the following points :

[1. That the act of 1885 is unconstitutional and no conviction can be had under it.   *Answer :* It is not necessary for us

to instruct you, as this indictment is not under the act of 1885.] [5]

[2. The evidence of the commonwealth shows that the article sold is an article of food not adulterated, not deleterious to the public health, therefore, no crime has been committed in its sale and the defendants cannot be convicted. *Answer:* We refuse to so instruct you, but refer you to what we said in the general charge in regard to that.] [6]

[3. The commonwealth has not shown that these sales were made as an article of food, and the verdict must be not guilty. *Answer:* This we decline. The commonwealth has shown that the sales made were made as butter, and it is a matter of common knowledge that butter is an article of food, and we decline to instruct you as requested in this point.] [7]

[4. That if the jury believe Julius Kolb and George Kolb were employed by Philip Kolb, they cannot be convicted for sales made by them. *Answer:* We refuse to so instruct you, but if either of them made sales they would be liable to conviction under the act of assembly.] [8]

The court charged the jury in part as follows:

[As to the second count in the indictment, if the evidence satisfies you beyond a reasonable doubt that the defendants, or either of them, sold what is oleomargarine for butter, then they would be guilty of the offense charged in the second count of the indictment.] [3] . . . .

[Was the article which the defendants sold oleomargarine and did they sell it under the name of butter? If they did, then they violated the provisions of this act of assembly and it would be the duty of the jury to convict them under the second count of the indictment.] [4]

Verdict of guilty in the second count with the recommendation to mercy and sentence thereon to pay costs of prosecution and necessary costs and expenses incurred in inspecting and analyzing oleomargarine, and each to pay a fine of $50.00. Defendants appealed.

*Errors assigned* were (1) in refusing to quash the indictment. (2) To rulings on evidence, reciting same. (3, 4) To portions of the judge's charge, reciting same (5, 8) Answers

to defendants' points, reciting points and answers. (9) In failing to instruct the jury as to the weight of evidence offered by defendants to establish a good character.

*J. O. Ulrich,* for appellants.—The first count was drawn under the act of 1885 and was nullified by the decisions of Mr. Justice PECKMAN in Schollenberger v. Pennsylvania, 171 U. S. 1, and Collins v. New Hampshire, 171 U. S. 30.

Defendants asked that the second count should be quashed for duplicity. The language used is not found in the Act of June 26, 1895, P. L. 317, and the count is bad and should have been quashed on motion before the jury was sworn. It is drawn to cover both the act of 1885 and the act of 1895 and the first portion of the second point embraced in the eight lines is drawn in the language of the act of 1885 and the last four lines show an attempt to cover the fourth clause of the 3d section of the act of 1895.

Under the ruling in Updegraff v. Com., 6 S. & R. 5 it is fatally defective.

The court admitted the evidence of C. B. Cochran without it having been shown that he was an expert in the analysis of butter or oleomargarine. And his testimony was on a different line, as suggested by the court, than that offered.

An expert is a person that possesses peculiar skill and knowledge upon the subject-matter that he is required to give an opinion upon: State v. Phair, 48 Vt. 366.

An indictment founded on a statute must set forth the charge in those words of the statute which described the offense: Hamilton v. Com., 3 P. & W. 142.

What Simmers bought was not for food and no other witness is produced to show that he or she ever bought any of it for food purposes.

There is no proof that it was sold as an imitation of butter, and Julius Kolb, George Kolb and Philip Kolb, the defendants, positively swear that they never sold anything within the past two years as an imitation of butter and nobody is produced to rebut that testimony.

There is a fatal variance between the averment in the indictment and the proof, in that the indictment charges the article was sold as an article of food and there was no proof of such

347, (1900.)]     Argument—Opinion of the Court.

fact, therefore, there was no proof of a violation of the act of assembly and the conviction cannot be sustained: People v. Fulle, 12 Abb. N. C. (N. Y.) 196; Com. v. Schollenberger, 153 Pa. 625.

A person cannot be convicted of violating the oleomargarine Act of May 21, 1885, P. L. 22, unless it affirmatively appears that he sold oleomargarine as an article of food.

The Act of 1895, P. L. 317, provides in section 1 "that no person shall manufacture for sale, offer for sale or sell any article of food which is adulterated."

The exact language of the statute must be used in charging an offense which is defined by statute: Updegraff v. Com., 6 S. & R. 5; Hamilton v. Com., 3 P. & W. 142.

Distinct offenses committed at different times by different parties, independently of each other, cannot be joined in the same indictment: Elliott v. State, 26 Alabama, 80; State v. Daubert, 42 Missouri, 242; Richards v. Willard, 176 Pa. 181.

*Charles E. Bartlett* and *Charles L. Brown*, for appellee.—As to the first assignment of error it merely appears on the record that on the day of the trial there was a motion to quash which was overruled.

It cannot be considered under Com. v. Williams, 149 Pa. 54.

As to the charge of duplicity that would be a mere informality and an objection would have to be made before the swearing of the jury and could be cured by amendment, although in fact there is no duplicity. In comparing the second count with the act of 1895, it will be found to tally with it.

If there was an inconsistency between the two counts that was cured by a verdict of guilty as to one of the two offenses and not guilty as to the other: Kilrow v. Com., 89 Pa. 480.

Opinion by Smith, J., April 23, 1900:

It is unnecessary to consider either the first count of the indictment or the Act of May 21, 1885, P. L. 22, on which it is based, since, by direction of the court, the defendants were acquitted on that count. Nor does the assignment of error raise any question as to the constitutionality of the Act of June 26, 1895, P. L. 317, on which the second count is based.

As the record fails to show the reasons for the motion to quash, we might properly refuse to consider the first specifi-

352    COMMONWEALTH *v.* KOLB.

Opinion of the Court—Dissenting Opinion.   [13 Pa. Superior Ct.

cation. As was said by Mr. Justice McCollum, in Com. v. Williams, 149 Pa. 54: " This is certainly a very loose and unsatisfactory practice, from which confusion and injustice may often result. It is necessary, for the protection of the common-wealth and the accused, and for the information of this court on appeal, that the motion to quash, with a specification of the alleged defects or irregularities on which it is based, should appear on the record. It is proper practice, therefore, to require that the motion, and the reasons for it, be reduced to writing and filed." As in that case, however, it was conceded that the specific objection below was that the indictment failed to show that the offense was committed in the county, the court decided to ·consider it. Here there is nothing to inform us of the objection below, and the argument has aimed at showing a variety of defects, none of which are specified on the record. But as the question of pleading, under the statute on which the second count is based, is one of importance, we have decided to consider it.

The objection that the second count is based in part on the act of 1885, and in part on the act of 1895, is without merit. The latter act provides that no person shall manufacture for sale, offer for sale, or sell, any article of food which, inter alia, " (4) is an imitation of or is sold under the name of another article." The second count charges that the defendants " did sell and offer for sale . . . . as an article of food, a certain oleaginous substance and compound of the same, the said oleaginous substance and compound of the same then and there being an imitation of butter, and did then and there unlawfully and knowingly sell and expose for sale the same, as and for, and under the name of pure butter." This, assuredly, is an adequate description, in substantially statutory language, of the acts that fall within the statutory prohibition. Its meaning is in no sense qualified by the extraneous matters associated with it; the averment of possession, with intent to sell, and the description of the article indicates the nature of its resemblance to the article for which it was sold. The language in relation to these matters, while apparently introduced in view of the act of 1885, does not for that reason vitiate the count. The most that can be urged is that it is unnecessary; but even if so it may properly be regarded as surplusage.

The objection on the ground of duplicity is untenable. This objection arises only when unconnected acts, each of which is a distinct offense, are charged in the same count. But when the several acts charged are merely aspects or stages of one transaction, though each, when alone present, is an offense, it is not duplicity to charge them all. Thus, an assault, though of itself an offense, is but one stage of a battery, and merges in it if the battery be committed; hence, in such case, both may properly be charged in one count. An offer to sell in violation of the act of 1895, though of itself an offense, is but a stage of the contract of sale, and when this contract becomes complete, the offer merges in the sale; hence both may be charged in one count. There may be a conviction of an assault, in the one case, or of an offer to sell in the other, should the evidence be insufficient to prove a battery or a sale. Further illustrations of this principle may be found in Com. v. Miller, 107 Pa. 276.

The offer exhibited in the second specification embraces testimony which is clearly competent, material and relevant. The objection urged on the argument, that the witness had not qualified as a expert, is not included in the specification. We may say, however, that any omission on this point, on the part of the commonwealth, was sufficiently supplied by the cross-examination.

The remaining specifications require but brief consideration.

To bring a case within the prohibition of the act of 1895, it is sufficient if "any article of food which is adulterated within the meaning of this act" be sold or offered for sale. In the case before us, the offense charged is the adulteration specified in clause 4 of section 3, the sale of an article which is an imitation, or is sold under the name, of another. Such a sale is a violation of the act, though the article sold is itself an unadulterated article of food, and not deleterious to health. Here, the indictment describes it as an imitation of butter; the offense charged is not merely its sale, but its sale " as and for, and under the name of pure butter." Neither butter, indeed, nor the article thus sold under its name, is described as an article of food. But the general use of the former as food is of common knowledge, and since the latter is described as offered for sale as an article of food, we may presume, after verdict, that it was such.

The omission to instruct the jury as to the effect of evidence of good character, if assignable as error in a case like the pres-

ent, in the absence of a request for such instruction, could not have prejudiced the defendants. The habitual sale of the article in question, as butter, was admitted by them on cross-examination, and the only matter of fact in dispute was whether or not this article was butter. The good character of the defendants had no possible bearing on this point, nor could it create a doubt respecting the conceded fact of sale. It seems hardly necessary to add that a person who commits an unlawful act is not relieved from the penalty by reason of having been employed to do so by another.

The record discloses no error, and the judgment is affirmed.