## Commonwealth *v.* Knox, Appellant.

511

512

Argued October 13, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (AR-NOLD, J., absent).

514

*Harry R. Back,* with him *Thomas D. McBride* and *Back & Levy,* for appellant.

*Malcolm Berkowitz,* Assistant District Attorney, with him *Samuel Dash,* Assistant District Attorney, *Michael von Moschzisker,* First Assistant District Attorney, *Thomas M. Reed,* Assistant District Attorney, and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY RENO, J., January 20, 1953:

Appellant, a duly elected and officiating magistrate of the City of Philadelphia, was convicted on an indictment charging (1) violations of the Magistrates' Court Act of June 15, 1937, P. L. 1743, as amended, 42 P. S. §1101, et seq.; (2) Malfeasance, misfeasance and nonfeasance; and (3) misconduct in office. He was sentenced to pay a fine of $500, undergo imprisonment for 3 months, and his office was declared forfeited and vacant.

He was also convicted on two other indictments upon which sentence was suspended, and no appeals were taken therein. Both sides have briefed questions

arising out of those convictions but they are not before us and will not be considered on this appeal. *Com. ex rel. Holly v. Ashe,* 368 Pa. 211, 82 A. 2d 244; *Com. v. Kimmel,* 172 Pa. Superior Ct. 76, 92 A. 2d 247. Moreover, we consider only the contentions relating to this appeal which appellant has briefed.

I. *The Act.* The constitutionality of the criminal provisions of the Act was upheld generally in *Rutenberg v. Philadelphia,* 329 Pa. 26, 35, 196 A. 73, and the purpose of the sections here pertinent was stated: "Sections 15 to 20, inclusive, seek to meet the need for drastic reform in the taking of insufficient or worthless bail. Probably the discharge of persons charged with crime, on 'straw bail' has been the most harmful practice of the present system. Discharges have been issued without requiring full and proper justification of the surety offered, and the magistrates have been dilatory in returning bail to the quarter sessions court, or have entirely failed to do so. So-called 'straw bondsmen' have imposed upon individual magistrates who had no facilities for checking encumbrances on real estate offered as security. It has been impossible for twenty-eight magistrates, acting independently, to detect and prevent the entry of fraudulent bail."

Section 15 requires the magistrate who holds a preliminary hearing to fix the amount of the bail, and he, but no other magistrate, may in certain cases, allow "bail to be entered without real estate security where, in his opinion, the evidence produced so warrants . . ." But once the bail has been fixed by a magistrate, either for trial in the criminal courts or for a further preliminary hearing, no other magistrate may increase or decrease the amount of the bail, or release without bail or upon defendant's own recognizance.

The magistrate who *takes* the bail, whether *fixed* by him or another magistrate, is required to "make a due and thorough investigation, under oath, into the finan-

cial responsibility of the recognizer or surety, and it shall be his duty to take of such recognizer or surety a written justification under oath setting forth", inter alia, detailed information of the name and address of the bondsman, a description of the property and its location in Philadelphia, its value, the liens against it, and other relevant data. Id. §16. No bail shall be taken without a justification and then only if the "surety, recognizor or bondsman offers as security a property situate within the city of Philadelphia, . . ." Id. §17.

In addition, before accepting bail, the magistrate is required to secure from the city controller a certificate showing the name of the owner of the property offered as security, the amount of unpaid taxes thereon, the amount of liens thereon, its assessed value, and whether the same property has theretofore been accepted as bail and whether that bail is still in force. Id. §18.

Having secured the written and verified justification and the controller's certificate, and being satisfied thereby "that there is sufficient equity in the property tendered as security", the magistrate "may accept the surety or bondsman as bail, and thereupon stamp or note upon the deed of the surety or bondsman, which said magistrate shall require to be produced before him, the fact that bail has been accepted by him, . . ." Id. §19.

The penalty provision, Id. §44, is printed in the margin.[1]

---

[1] "Any magistrate or other person charged with the performance of any duty or prohibited from performing any act by any of the provisions of this act, who shall violate any of the provisions of this act, shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to pay a fine not exceeding one thousand five hundred dollars ($1,500.00), or undergo imprisonment not exceeding three years, either or both, in the discretion of the court, and, in addition thereto, any magistrate so convicted shall forfeit his office and be removed therefrom by the court in which such conviction shall have been had."

II. *The Evidence.* The indictment alleges three acceptances of bail in violation of the Act and the other counts grew out of the same transactions. Appellant having been found guilty the testimony,[2] and the reasonable inferences which may be drawn from it, will be viewed in the light most favorable to the Commonwealth. *Com. v. Schuster,* 158 Pa. Superior Ct. 164, 44 A. 2d 303; *Com. v. Logan,* 361 Pa. 186, 63 A. 2d 28. Necessarily the facts must be here roughly summarized.

In the first case, Phyllis Rogers was arrested on a warrant as a fugitive from justice. After proceedings which need not be related, Magistrate Keiser, after a preliminary hearing, held her for a further hearing and fixed her bail at $1,000. At her request, Sidney Ginsberg, a law student in the office of her attorney, interviewed Edward Biener, a professional bondsman who, at that time, was on the "district attorney's blacklist" and thereby prohibited from entering bail. Biener and Ginsberg went to appellant's office where the latter was holding a hearing, which he interrupted and called Biener to his bench and conversed with him. Later Ginsberg was called to the bench and Biener asked him to sign a paper identifying Biener as a bondsman. Ginsberg signed a paper which, except the signature line, was covered by another paper. Appellant asked Ginsberg no questions and did not swear him. It later developed that the paper was a bail bond for $1,000. Ginsberg also signed a justification which was entirely blank and to which appellant did not attach a jurat. Ginsberg owned no real estate and his total assets were less than $100. Appellant issued a release upon which

---

[2] Only selected parts of the testimony were printed but the printed portion amounts to 529 pages. Study of the testimony was rendered exceedingly difficult by appellant's failure to observe our Rule 37 requiring references in the brief to the pages of the record where the relevant evidence appears.

Phyllis Rogers was discharged from prison. No bail approval was secured from the city controller.

The Margus and Mangiello cases are the subject of separate counts but they may be joined in this narrative. They were notorious racketeers who were held by Magistrate D'Ortona, sitting at a station house at 24th and Wolf Streets, for a further hearing on charges of violating the Uniform Firearms Act, reckless use of firearms, and attempt to kill, and their bail was fixed at $10,000 each. Mrs. Rhoda Mangiello, wife of one of the defendants, was present at the hearing. Sam Simon, described as a "committeeman's helper", approached her in the court room and gave her two blank bail bonds which she signed. With Simon and others, Mrs. Mangiello was driven 12 miles to the station house at Paul and Ruan Streets, where appellant accepted the blank bonds, and subsequently inserted the amount of $10,000 in each of them. Mrs. Mangiello then had only an equity of $2,200 in real estate and a $900 bank deposit. Appellant did not swear her or see her sign the bonds. She did not sign or swear to justifications, and controller's certificates were not procured. Mrs. Mangiello paid Simon $250 for his "services". Margus and Mangiello were discharged from prison on appellant's order. Later, when the district attorney's office was informed of this transaction, and at his instance, proper and substantial real estate security was entered for them.

On this testimony, and much more which has not been recounted, the jury could find beyond a reasonable doubt, and doubtless did so find, that appellant violated those provisions of the Act which required him to have real estate bail justified under oath, to secure a controller's certificate, to inquire into the sufficiency of offered bail, and to compel production of the muniments of title.

The counts charging malfeasance and misbehavior in office will be later examined.

III. *The Constitutional Question.* Appellant's major contention is that the Act is an unconstitutional legislative invasion of the judicial power. *Rutenberg v. Philadelphia,* supra, generally upheld the criminal provisions of the Act but added, p. 36: "As in all instances where this court is required by the pleadings to deal in general with a statute, we leave open, until properly raised, and after full argument, the question whether any particular Section or part of an act is invalid in circumstances that may then be presented".

The judicial power of the Commonwealth has been partially vested in the magistrates' courts. Constitution, Art. V. §1. The judicial power is the power which administers justice, and upon that power the legislature may not encroach. "The functions of the several parts of the government are thoroughly separated, and distinctly assigned to the principal branches of it, the legislature, the executive, and the judiciary, which, within their respective departments, are equal and coordinate": GIBSON in *De Chastellux v. Fairchild,* 15 Pa. 18, 20. The legislature cannot dictate to the courts how they shall decide matters coming before them judicially. *Leahey v. Farrell,* 362 Pa. 52, 66 A. 2d 577. Nevertheless the power of the legislature to prescribe remedies and to regulate procedure cannot be doubted, *Sayres v. Com.,* 88 Pa. 291, and the sections here involved were sustained in the *Rutenberg* case, p. 41, as valid and constitutional regulations of procedure in the magistrates' courts: "The valid Sections standing alone constitute a proper exercise of legislative power to prescribe criminal procedure and administrative reforms in these courts."

The Act does not interfere with, restrain, coerce, or diminish the judicial power. It does not dictate the decisions which a magistrate shall make. He may fix the amount of bail where the case is originally brought

before him and in all cases determine its sufficiency. Only the methods and the forms of the proceeding on which determination of the sufficiency of the bail shall rest have been regulated. His judicial discretion may still be exercised, but only upon formal and verified information supplied by the bondsman, confirmed by the controller. The Act does not impinge upon the judicial function in any form or degree, but it does prescribe ministerial and mandatory duties which magistrates must discharge.

Nor can the constitutional competency of the General Assembly, in the exercise of the police power, to impose criminal sanctions for violations of the provisions of the Act be successfully questioned. In the *Rutenberg* case, supra, p. 37, the Supreme Court found: "When the present act is analyzed, it is clear that the paramount legislative purpose is to correct evils existing on the criminal side of these courts." Whether the evils were of such magnitude and impact as to call for criminal punishment was primarily a question for the determination of the legislature, which the courts will not overrule so long as the legislative action bears a substantial relation to the evil to be corrected, and is not manifestly arbitrary, oppressive, unreasonable, or discriminatory. *Com. v. Widovich,* 295 Pa. 311, 145 A. 295; *Com. v. Stofchek,* 322 Pa. 513, 185 A. 840; *Farmers-Kissinger Market House Co., Inc., v. Reading,* 310 Pa. 493, 165 A. 398. Similar legislation has frequently been enacted, from the early days of the Commonwealth to this date, to regulate justices of the peace,[3] and we

---

[3] See the scholarly opinion of President Judge Box in *Com. ex rel. Connor v. Meehan,* 67 D. & C. 537, which includes a list of statutes requiring justices of the peace to perform ministerial acts under criminal sanctions. Justices of the peace are also constitutional officers. Constitution, Art. V. §11. Magistrates are merely salaried justices of the peace.

find nothing in the instant Act that calls for judicial interposition.

*McNair's Petition,* 324 Pa. 48, 187 A. 498, upon which appellant relies, holds nothing to the contrary. It holds, as we do, that magistrates are vested with judicial power and that in its exercise they must be free and untrammeled in forming an independent judgment. However, no legislative act, such as is here involved, regulated procedure in the magistrates' courts in Pittsburgh, and the case does not reach the problems presented by this appeal.

IV. *Malfeasance and Misconduct.* As stated, separate counts in the indictment charged appellant with malfeasance, misfeasance and nonfeasance, and misconduct in office. Appellant contends that these counts were bad and that the conviction upon those counts cannot stand. The contention must be sustained.

The Penal Code of June 24, 1939, P. L. 872, §1104, 18 P. S. §5104, provides: "In all cases where a remedy is provided or duty enjoined, or anything directed to be done by the penal provisions of any act of assembly, the direction of said act shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act into effect." Applying this provision, the Supreme Court held that public officials cannot be convicted of the common law offenses of malfeasance, misfeasance, or nonfeasance or misdemeanor in office where, as here, a statute provides a specific penalty for the violation of its provisions. *Com. v. Peoples,* 345 Pa. 576, 28 A. 2d 792. See also *Com. v. Fahey,* 156 Pa. Superior Ct. 254, 40 A. 2d 167.

This defect, however, does not invalidate the conviction upon the good counts. Where an indictment contains several counts, some of which are faulty, a

general verdict will be sustained; one good count is sufficient to sustain a general verdict. *Hazen v. Com.,* 23 Pa. 355; *Com. v. Prickett,* 132 Pa. 371, 19 A. 218; *Com. v. Schoenleber et al.,* 96 Pa. Superior Ct. 76.

And since the sentence imposed is below the maximum penalty provided by the Act, no modification thereof is required. *Com. ex rel. Biscetti v. Leslie,* 290 Pa. 530, 139 A. 195; *Com. ex rel. Holinko v. Ashe,* 290 Pa. 534, 139 A. 197; Cf. *Com. v. Clark,* 123 Pa. Superior Ct. 277, 187 A. 237.

V. *Removal From Office.* The Act provides that upon conviction a magistrate "shall forfeit his office and be removed therefrom by the court in which such conviction shall be had." Appellant contends that he was not properly convicted of misbehavior in office or of an infamous crime and that the sentence imposed upon him violated the Constitution, Art. VI, §4, which provides: "All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate."

This constitutional provision has been construed by the Supreme Court: " 'Under the new Constitution there are three kinds of removal, to wit: on conviction of misbehavior or crime, at the pleasure of the appointing power, and for reasonable cause on the address of two-thirds of the senate. All officers are subject to the first

kind, appointed officers to the second, and elected officers to the third. It seems to us very clear that the word 'officers' here is used in the same sense throughout the section so far as their classification into state, county and municipal, is concerned' ": *Com. ex rel. v. Likeley,* 267 Pa. 310, 314, 110 A. 167, quoting *Houseman v. Com. ex rel.,* 100 Pa. 222, 230. Moreover, "All officers" is an inclusive phrase, and in it are comprehended offices created by the constitution, such as that occupied by appellant, as well as those created by statute. They may be removed from office upon a conviction "of misbehavior in office or of any infamous crime" by a sentence of a court and it is not necessary in such instances to resort to the impeachment or the Senatorial address process prescribed by the Constitution. *Bowman's Case,* 225 Pa. 364, 74 A. 203, appellant's reliance, is inapposite; the justice of the peace there sought to be removed had not been convicted of a crime. Cf. *Georges Township School Directors,* 286 Pa. 129, 133 A. 223.

Although appellant's offense affected the public administration of justice (see *Com. v. Shaver,* 3 W. & S. 338, 342) it was probably not an "infamous crime" but most certainly it constituted "misbehavior in office". The latter offense is committed whenever a public officer fails to perform a positive statutory duty. *Com. v. Hubbs (No. 2),* 137 Pa. Superior Ct. 244, 8 A. 2d 618; *Com. v. Zang,* 142 Pa. Superior Ct. 566, 16 A. 2d 741; *Com. v. Kirk,* 141 Pa. Superior Ct. 123, 14 A. 2d 914; *Com. v. Peoples,* supra. It is not essential to a removal that the public official be validly convicted of the common law offenses of malfeasance or misconduct in office. A removal is justified where the officer has been convicted of the violation of a statute which commands the performance of a positive, ministerial duty of his office.

The Constitution is the voice of the people; they have unequivocally ordained that *"All* officers . . . *shall be removed* on conviction of misbehavior in office or of any infamous crime". (Emphasis added.) This is a direct recall by the people of criminally unfaithful public servants who, sworn to obey and enforce the law, themselves violate it. Their self-executing mandate must be complied with, whether or not there is statutory authority for the removal, *Com. ex rel. v. Davis,* 299 Pa. 276, 149 A. 176, but in the instant case the Act expressly requires removal from office.

VI. *The Charge and Rulings on Evidence.* The trial judge charged, in substance, that to secure a conviction of violations of the Act the Commonwealth was not required to show a criminal or corrupt intent. He added: "The whole purpose of the Act is to prevent any Magistrate from following a practice which makes it easy for himself or any other person to pervert justice. Hence, an honest Magistrate who disobeys its regulations is as guilty of violations of the Act as a dishonest one who does so corruptly."

Consistently with this proposition, the trial judge ruled that evidence of good character was not admissible as to the counts charging violations of the Act, but was admissible and was in fact received in respect to the counts alleging malfeasance and misconduct in office.

The charge and the ruling were correct. The Act (§44) provides that "any magistrate . . . who shall violate any of the provisions of this act, shall be guilty of a misdemeanor, . . ." Wilfulness, criminal intent or the mens rea, are not statutory ingredients of the crime, and the Commonwealth is not obliged to prove them. The Act is an exercise of the police power, enacted for the purpose of requiring adherence to highest standards of conduct in the administration of justice,

the prime objective of all government, and proof of intent is not necessary to a conviction. *Com. v. Jackson,* 146 Pa. Superior Ct. 328, 22 A. 2d 299, affirmed 345 Pa. 456, 28 A. 2d 894. "Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible": Chief Justice COOLEY in *People v. Roby,* 18 N. W. 365, (Mich.), quoted in the *Jackson* case, supra, p. 332. See also *Carlson's License,* 127 Pa. 330, 18 A. 8; *Com. v. Zelt,* 138 Pa. 615, 21 A. 7; *Com. v. Weiss,* 139 Pa. 247, 21 A. 10; *Com. v. Hackney,* 117 Pa. Superior Ct. 519, 178 A. 417.

By the same token, evidence of good character, so far as it related to the counts charging violation of the Act, was properly excluded. Where the mens rea is not involved in a crime defined under the police power, i. e., where the sole question is whether the defendant performed the act forbidden by law or failed to perform the act commanded by it, his character is not in issue for any purpose, and evidence of his good reputation for some trait or another is not admissible. *Com. v. Cohen,* 103 Pa. Superior Ct. 496, 157 A. 216; *Com. v. Carl,* 87 Pa. Superior Ct. 110; *Com. v. Kolb,* 13 Pa. Superior Ct. 347.

VII. *Additional Contentions.* Appellant's minor contentions are without merit and will be succinctly dismissed.

Even if, as appellant alleges, the Rogers woman was held for a further hearing illegally, because of certain provisions of the Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, he cannot collaterally attack that proceeding. He accepted bail for her, and whether or not she could eventually be held criminally culpable, he was bound to observe the provisions of the Magistrates' Court Act.

Appellant testified that he had never read the Magistrates' Court Act, and sought to justify his actions by what he had been told was the practice of other magistrates in accepting bail for further hearings. He was allowed to testify to that fact, and complains because he was not allowed to show that the Act has been variously interpreted by different magistrates. In his charge the trial judge said: "Nor have you any concern in this case with the conduct of other Magistrates. If any of them violated the law, they were faithless to their duty, and the crime of others is never an excuse for one's own." The charge and the rulings were correct; the interpretation of the Act was for the court.

Finally, appellant complains because the court admitted evidence showing the attendant circumstances in which he accepted bail, the nature of the charge against the defendants, the character of the bondsman, and, in the Margus and Mangiello cases, the importance the Commonwealth attached to their production at a hearing. A review of the testimony would extend an already protracted opinion to inordinate lengths. It is enough to say that most of the testimony of which appellant now complains was admitted without objection and that no part of it can, in a consideration of the whole, be declared harmful or prejudicial. A careful study of the entire record reveals a meticulously fair trial, extending over six days, in which appellant was ably represented by eminent counsel, and conducted by Judge ALESSANDRONI with considerate and keen understanding of the situation in which appellant had placed himself. He committed no reversible error.

The court properly refused appellant's motions for a new trial and in arrest of judgment.

Judgment and sentence affirmed, and appellant will appear in the court below at such time as he may be there called and be committed by that court until he

has complied with his sentence or any part thereof which had not been performed at the time this appeal was made a supersedeas.