## Commonwealth v. Costello

Before MacElree, P. J., specially presiding, and Milner and Waters, JJ.

*Thomas M. Reed*, Assistant District Attorney, and *Victor H. Blanc*, District Attorney, for Commonwealth.

*William A. Gray*, for defendants.

MILNER, J., September 11, 1958.—In my opinion the motion in arrest of judgment in this case must be granted.

Defendants waived a jury trial and were tried before Judge MacElree on bills of indictment numbered 978 to 983, inclusive, of April sessions 1954, and 1010 to 1017, inclusive, of February sessions 1955. The trial judge made a finding of guilty on bills 978, 981 and 982, and bills 1014 to 1017, inclusive, and a finding of not guilty on the remaining bills. The distinc-

tion is significant. Defendants are public officers, one a magistrate and the other an elected constable. The finding was one of guilty on all bills charging defendants with intimidating, levying blackmail and extorting money and with conspiring to do so, but not guilty on the companion bills relating to the same matters wherever the charge was extorting money as public officers and by color of office.

There seems to be no doubt that the conclusion of the trial judge was that the proofs did not support a verdict of guilty of *extortion* as defined in section 318 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4318, which provides: "Whoever, being a public officer, willfully and fraudulently receives or takes any reward or fee to execute and do his duty and office, except such as is or shall be allowed by some act of Assembly, or receives or takes, by color of his office, any fee or reward whatever, not, or more than is, allowed by law, is guilty of extortion, a misdemeanor."

The trial judge did, however, consider the proofs sufficient to convict defendants beyond a reasonable doubt of a violation of section 801 of The Penal Code, 18 PS §4801, which provides: "Whoever by means of written, printed or oral communications, intimidates, or levies blackmail, or extorts money, property or other valuable thing from any person or by such means attempts to intimidate, annoy, or levy blackmail, or extort money, property or other valuable thing from any person, is guilty of a misdemeanor." This section 801 is of statutory origin and relates to what is known as *"blackmail."*

Section 318 of The Penal Code is the statutory analogy of the common law definition of extortion, which has been stated to be "an abuse of public justice which consists in an officer's unlawfully taking, by color of his office, from any man, any money or thing of value that is not due to him, or more than is due, or before

it is due": 4 Blackstone, Commentaries on Laws of England 141. To be guilty of common law extortion, a defendant must be a public officer or, at least, be engaged in the performance of some of the functions of government. See Commonwealth v. Gettis, 71 D. & C. 1 (1949), affirmed 166 Pa. Superior Ct. 515 (1950).

The offense prohibited by section 801 of The Penal Code and by that section's source, the Act of June 9, 1911, P. L. 833, is not common law extortion; the statute makes the acts therein described misdemeanors whether committed under color of office or not: Commonwealth of Pennsylvania v. Hoagland, 93 Pa. Superior Ct. 274 (1928). The same applies to the five succeeding sections of The Penal Code, sections 802 to 806, inclusive. These sections in the 1939 Code are labeled "Blackmail," but in The Criminal Code of March 31, 1860, P. L. 382, they appeared under the heading "Threats, Extortion or Blackmailing." Blackmail as we now know it, extortion by a private person, was not an indictable offense at the common law, but it has been made so by this statute, whereas the common law offense of extortion, i.e., blackmail by color of office, is covered by section 318 of The Penal Code.

If we assume that a public officer, such as either of defendants here, may be found guilty of extortion as defined in section 801, it must be because he is not so charged as a public officer and the offense is not charged to have been committed by color of his office. In all the bills on which the finding was guilty in the case before us, defendants were charged as private persons; no mention is made of their offices and there is no allegation that the offenses charged were committed by them under the color of their offices. In bill 1014 of February sessions 1955, Costello is charged with conspiring to extort from William Marshall, Earl Wimberly and Esther B. Manuel. In bill 1015 of the

same term, Costello is charged with having extorted from William Marshall, in bill 1016 with having extorted from Earl Wimberly and in bill 1017 with having extorted from Esther B. Manuel. The dates alleged in the bills are respectively February, March and July 1952.

In bill 978 of April sessions 1954, Costello and Erwin are charged with conspiring to extort from Leonard Bell. In bill 981 of the same term, they are charged with attempting to extort $500 from Bell and extorting $200 from him, in bill 982 with attempting to extort $300 from Bell. The date alleged in these bills is September 1952.

I pause here to note that with respect to bills 1014, 1015, 1016 and 1017, of February sessions 1955, at the time of the finding of the bills of indictment more than two years had elapsed from the dates of the alleged offenses. The Criminal Procedure Act of March 31, 1860, P. L. 427, sec. 77, as amended April 6, 1939, P. L. 17, sec. 1, 19 PS §211, provides:

"All indictments which shall hereafter be brought or exhibited . . . for all misdemeanors, perjury excepted, shall be brought or exhibited within two years next after such felony or misdemeanor shall have been committed: . . . provided also, That indictments for malfeasance, misfeasance, or nonfeasance in office, or for extortion or blackmail by color of office, . . . or for any misdemeanor in office, or for any conspiracy to commit any of said offenses heretofore or hereafter committed by any officer or employe of this Commonwealth or of any agency thereof, or of any city, county, borough, township, or school district or of any agency thereof, and their accomplices and confederates, may be brought or exhibited at any time within two years from the time when said public officer or said employe shall have ceased to occupy such office or such employ-

ment, but in no event more than six years from the commission of the offense."

The district attorney showed in bills 1010, 1011, 1012 and 1013 that he knew how to indict Costello, as a public officer, for extortion and blackmail by color of office and for misdemeanor in office and for conspiracy to commit such offenses. He showed also, by bills 1014, 1015, 1016 and 1017, which were returned simultaneously, his intention to charge defendant with extortion and conspiracy not as a public officer or by color of office but as a private person. The former group of bills, charging defendant as a public officer and by color of office, were within the six-year period of limitation; but on these bills the finding was not guilty. On the latter group, which charged Costello as a private person, the two-year statute of limitation was available as a defense, but it does not appear to have been raised at the trial. Whether it could, nevertheless, be raised on the motion before us it is not necessary to decide because of the conclusion which I have reached.

Defendants have filed motions in arrest of judgment, under the Act of June 15, 1951, P. L. 585, 19 PS §871. The motions were argued before Judges MacElree, Waters and myself, sitting as a court en banc. I am convinced, after a careful and thorough study of the transcript of the testimony, that there was not legally sufficient evidence to sustain the charges of which defendants were found guilty, and that defendants should be discharged.

Both section 318 relating to extortion, and section 801 relating to blackmail, are contained in the same act, viz., The Penal Code of June 24, 1939, P. L. 872. At the outset of this discussion I indicated my belief that there is a clear distinction between the crimes defined in section 318 and section 801 of The Penal Code. Section 801 is the general section, applying to

persons not in public office; section 318 is a special section and has to do with acts committed by public officers and by color of office. In Commonwealth v. Brown, 346 Pa. 192 (1943), the Supreme Court at page 199 held: "It is the policy of the law not to permit prosecutions under the general provisions of a penal code when there are applicable special penal provisions available."

In the Brown case the Supreme Court, reversing the Superior Court, held that "section 322 of The Penal Code of 1939 which treats of perjury generally in its manifold forms does not affect in any way the specific penal provisions of the Election Code of June 3, 1937, P. L. 1333, which relate to violations of that code, and that any person who is charged with knowingly making false statements in any affidavit required by that Code to be appended to or accompany a nomination petition or a nomination paper, etc., must be prosecuted under *its* penal provisions and not on a charge of perjury under the Penal Code."

Judge Forrest, in Commonwealth v. Moyer, 83 D. & C. 271 (1952), held that although the evidence was adequate to support a conviction under the section of The Penal Code relating to fraudulent conversion of partnership property, it would not warrant a conviction under the general section covering fraudulent conversion. In the same way, if the evidence in the instant case supports any conviction, it is on the charge of extortion by a public officer, a violation of section 318. As public officers, defendants were not properly indicted, nor could they be convicted, of a violation of section 801. In the Moyer case Judge Forrest had before him a motion for a new trial. He treated that motion as a motion in arrest of judgment under the Act of 1951 and discharged defendant.

The Magistrates' Court Act of June 15, 1937, P. L. 1743, as amended, 42 PS §1101, defines the duties and

obligations of magistrates and provides that any magistrate who shall violate any provision of the act shall be guilty of a misdemeanor and upon conviction shall be sentenced to pay a fine not exceeding $1,500 or undergo imprisonment not exceeding three years, either or both, in the discretion of the court, and, in addition thereto, any magistrate so convicted shall forfeit his office and be removed therefrom by the court in which such conviction shall have been had. This is a specific statutory provision under which defendant Costello could have been indicted, but he was not indicted under this statute. In Commonwealth v. Knox, 172 Pa. Superior Ct. 510 (1953), affirmed by the Supreme Court in 374 Pa. 343 (1953), it was held that a magistrate charged with the common law offenses of malfeasance, misfeasance and misconduct in office could not be convicted of the same if a statute provides a specific penalty for the violation of its provisions.

The fact that defendants were indicted and convicted under the general provision of The Penal Code when there was an applicable special penal provision available under which they were found not guilty is in my opinion sufficient reason for granting defendants' motion and discharging them; but there is another compelling reason to grant the arrest of judgment, which is that there was not legally sufficient evidence to sustain their conviction under either section of The Penal Code.

The chief witness for the prosecution was David Ellerbe, who with Lindberg Pue had already been convicted of extortion. Without Ellerbe's testimony, there could plainly be no conviction of Costello and Erwin. Ellerbe was a self-confessed extortioner and perjurer; his testimony, as that of an alleged accomplice, was subject to grave suspicion and close scrutiny. The competency of Ellerbe as a witness I do not question. Though a confessed perjurer, he had not been con-

victed and sentenced as such. Though he was a convicted extortioner and an alleged accomplice, nothing in the law of Pennsylvania disqualifies him as a witness. The jury in any case, and in this case the judge hearing the case without a jury, may accept the testimony of an accomplice as verity, even without corroboration. I am convinced, however, that in this case the testimony of Ellerbe was so corrupt in its source, and the circumstances of its procurement were so tainted and so prejudicial, as to render it wholly unworthy of belief. Of course the credibility of all witnesses is for the trier of the facts. I cannot put myself in the trial judge's place and say that because I have a reasonable doubt, he should have a reasonable doubt also. But if there is a reasonable doubt of defendant's guilt, it is fundamental that he must be acquitted, and it is my feeling not only that no one could read or hear the testimony in this case without having a reasonable doubt of defendants' guilt, but that the trial judge by his finding and by his utterances during the trial demonstrated that he had a reasonable doubt which he failed to resolve in defendants' favor.

Credible evidence is evidence which the trier of the facts accepts as true. If the trial judge had believed Ellerbe's testimony, he would inevitably have found both defendants guilty of extortion as public officers. That he disbelieved Ellerbe follows inexorably from his finding of not guilty on those charges. There is no portion of the testimony that supports a conviction under section 801 of The Penal Code and fails to support a conviction under section 318. I think the trial judge was right in disbelieving the testimony as it related to extortion under section 318. I think that he should have gone further and said that, since the evidence did not support those charges, the other charges must fall also.

It would be wrong merely to rely on generalities in setting aside a finding made by a jurist so eminent and experienced as Judge MacElree, whose conclusion undoubtedly represented his conviction at the end of the trial. It is necessary to review in some detail, but not at length, the background and origin of the testimony on which the Commonwealth relies.

Ellerbe was a man who had been used as a process server by John Erwin, who was a constable attached to the office of Magistrate Costello. He was convicted of extortion and was sentenced on January 6, 1954, by the late Judge Crumlish to 18 months to three years in the Eastern Penitentiary. The charge on which he was convicted concerned a man named Richard Bell, who claimed that Ellerbe had demanded $500 from him under a threat to prosecute him for bigamy, that he (Bell) had paid $200 to Ellerbe and that Ellerbe had been arrested when he had attempted to collect the remaining $300. Lindberg Pue was convicted and sentenced at the same time with Ellerbe. Both men had pleaded not guilty and had denied the charges altogether.

On March 29, 1954, Ellerbe was taken from the penitentiary to the district attorney's office upon an order obtained by that office. Members of the district attorney's staff talked to Ellerbe for some two hours and showed him statements purporting to have been made by both Costello and Erwin, the present defendants, but Ellerbe maintained that neither Costello nor Erwin had been involved with him and that they did not get any of the money he obtained. They then took Ellerbe to the home of the then district attorney, Richardson Dilworth, who was confined to his bed. Four assistant district attorneys were at the district attorney's home. The district attorney and his assistants talked to Ellerbe and endeavored to persuade him to make a statement implicating Costello and Erwin.

They showed him a statement purporting to have been signed by Erwin and bearing a signature which Ellerbe said he thought was Erwin's. In the trial before Judge MacElree the purported statement by Erwin was not produced, and the Commonwealth's counsel at that time admitted that it had existed but was wholly spurious.

The district attorney's office was apparently unable to get Ellerbe to say that Costello received any of the money he received, but he testified that at the meeting in the district attorney's bedroom, after he was shown the spurious statement purporting to be signed by Erwin, Mr. Dilworth said: "What I want you to do is sign a statement that Costello got half of the money," and he told him to tell the truth and make out a statement and "I will get you out", meaning released from prison. Ellerbe did make such a statement, and the district attorney kept his promise; Ellerbe's sentence to the penitentiary was reconsidered and vacated and sentence deferred. He has never been resentenced. He was released on bail forthwith and placed on the district attorney's payroll. He was paid $57 a week at first and then raised to $67 a week, which he received regularly until the time of defendants' first trial about a year and one month later. He was paid a total of $3,-752. He was subsequently indicted for extortion, blackmail and conspiracy on five bills of indictment, but has never been brought to trial. Although the then district attorney and four assistant district attorneys who were present at the meeting at Mr. Dilworth's house were available at the time of the trial in this case and were not engaged in representing the Commonwealth at the trial, none of them appeared at the trial to deny Ellerbe's testimony.

Ellerbe kept his part of the bargain he had made with the district attorney. He performed no work in return for the salary he received for a year, but he

testified as a witness for the Commonwealth when Costello and Erwin were brought to trial. He admitted that he had approached Bell, with Pue, and had demanded $500 from Bell as the price of keeping Bell out of trouble, and that Bell had paid him $200. He testified that what he had done was with Costello's knowledge, and that he had paid the $200 to Costello and Costello had given him and Erwin $50 each out of that money. He testified that after he had been arrested he telephoned to Costello and that Costello said that he would arrange for the entry of bail for him and would engage counsel to represent him, that everything would be taken care of. Ellerbe was released on bail. He was represented at the preliminary hearing and at his trial by Morris Passon, of the Philadelphia bar.

This is the sum of Ellerbe's testimony with respect to defendants' participation in the Bell matter. It comes from a corrupt source. It is the testimony not only of an admitted perjurer, but of an alleged accomplice. On both grounds it must be viewed with grave suspicion and accepted only with great caution. The circumstances in which it was induced are such that I find it wholly unworthy of belief. How many criminals serving time in the penitentiary would not welcome the opportunity to fasten guilt on another if by doing so they could be assured of their liberty and immunity from further prosecution, to say nothing of being maintained on the public payroll without working? It is the settled practice of our judges to instruct juries to view the testimony of an accomplice with suspicion and regard it as unsafe to rely on without confirmation, because of its corrupt source. I feel sure that the trial judge in this case, had it been tried to a jury, would have felt it his duty to caution the jury in this way. I feel sure also that in these special circumstances, where the witness had not only been promised

immunity but had agreed to testify in a particular way, the trial judge would have cautioned the jury that before they could accept the witness's testimony they should have independent corroboration of the most convincing sort. Let us examine briefly the testimony offered by the Commonwealth as corroborative of Ellerbe's narrative.

Lindberg Pue was one of three Commonwealth witnesses who were unavailable and whose testimony at the previous trial was offered. Pue had been indicted with Ellerbe and convicted. He was, therefore, an accomplice with Ellerbe; his testimony may not be relied on for the purpose of corroboration. One accomplice cannot corroborate another. Commonwealth v. Simon (No. 1), 44 Pa. Superior Ct. 538, 542 (1910).

The testimony of Leonard Bell and Margie Mizell, his wife, was that after the latter had applied for the issuance of a warrant for the arrest of one Mildred Gibson, Ellerbe came to their home at 1612 Ogden Street and told Bell that he was in trouble, apparently because Bell was supposed to have committed bigamy, and that Ellerbe could get him out of it for $500. While Ellerbe was at the Bell home he made a telephone call. Neither witness could say to whom the call was made, and each testified to hearing Ellerbe say, in substance: "It is another of those things." They testified that the next day, when they went to Costello's office, they paid $200 to Ellerbe in a restaurant nearby, in the presence of Lindberg Pue.

Jack Israel, another witness who was unavailable and whose prior testimony was introduced, was, at the time of Ellerbe's arrest, a professional bail bondsman. He testified that Erwin telephoned to him and asked him to go to the police station and arrange for Ellerbe's release. Israel had Ellerbe released on a copy of the charge that evening on the signature of Magistrate Knox, and the next morning posted bail for the further

appearance of Ellerbe and Pue, the cost of which he testified was later paid to him by Erwin in Costello's office.

This was the extent of the testimony offered by the Commonwealth purporting to corroborate the stories of Ellerbe and Pue respecting the implication of Costello and Erwin in the Bell matter. To my mind it is no corroboration at all, but merely a recitation of circumstances as consistent with defendants' innocence as with their guilt.

Esther B. Manuel testified that he was arrested on a warrant charging him with assault and battery on one Olivia Young and that he was induced to pay Ellerbe $300 to get himself out of trouble. At the hearing before Magistrate Costello, Manuel testified, the magistrate first stated that he would sentence defendant to 90 days in jail, but that, after a conversation between Ellerbe and the magistrate which Manuel did not hear, the magistrate held defendant in bail to keep the peace.

William Marshall testified that he was arrested on the complaint of his wife and that Ellerbe demanded and received $50 from him in the men's room behind the magistrate's office, and that after the hearing he was allowed to discuss the matter with his wife and the magistrate discharged him with a reprimand.

Earl Wimberly also came before Magistrate Costello on an assault-and-battery charge lodged by his wife. He was a third unavailable witness, whose testimony at the prior trial was introduced before Judge MacElree. He testified that before the hearing he paid $15 each to Ellerbe and another man, and that after the hearing he was required to sign a bond to keep the peace. Wimberly then testified that after he had signed the bond Costello asked him for a "little donation", and Wimberly gave him $50, which Cos-

tello placed in a tin box. Ellerbe's testimony was that he had no recollection of Wimberly.

I cannot accept the testimony of either Manuel or Marshall as corroborating that of Ellerbe. It is too easy for a man of Ellerbe's character, acting on the credulity of a defendant caught in the toils of the law, to make it appear that a payment to Ellerbe would find its way into the hands of the magistrate and bring about the desired result. There is nothing in their testimony that carries the conviction that Costello or Erwin received any of the money, or that they even knew that money had been paid. And if Costello and Erwin were a part of Ellerbe's scheme to mulct these people and did share in the proceeds, they would clearly be guilty not of blackmail or extortion under section 801 of The Penal Code, but of a violation of section 318, of which the trial judge acquitted them. The same is true of the Wimberly case. If Costello, after Wimberly had signed his peace bond and was free to go, asked for and received a "donation" of $50, that was a violation of section 318, the receiving of money by a magistrate by color of his office to which he was not entitled by law.

Before the passage of the Act of 1951, the only way in which the court could cure what it considered an improper verdict of guilty in a criminal prosecution was by granting a new trial. Our Pennsylvania judges did not hesitate to exercise this power. As far back as 1876, Judge Briggs, in Commonwealth v. Platt, 11 Phila. 421, 422, said: "Judges Allison, Peirce, Hare, Mitchell, Ludlow, Finletter, and Thayer, whom I have consulted, authorize me to say that there can be no doubt of the power, nor of the duty of the judge, to set aside the verdict in any case where he is of the opinion that injustice has been done."

But a new trial in this case would serve no purpose. The Commonwealth has twice presented everything

that it can present; another repetition would add nothing. The Act of 1951 gives the court an added power, that of entering what is in effect a judgment non obstante veredicto for defendant when the evidence in a criminal prosecution is insufficient to sustain the charge. In this case I think the evidence is insufficient. I am not overlooking the cases which say that the credibility of the evidence, or even the testimony of an acknowledged perjurer and accomplice, is for the trier of the facts; but I say that precedents are of little value in the consideration of extraordinary situations. I do not believe that in the whole history of the criminal law in Pennsylvania there was ever a case where a conviction was sought by the Commonwealth on the evidence of such a man as Ellerbe, obtained by such methods as were used in this case. If there has been such a case, it has not come to my attention.

The trial judge also had difficulty in putting credence in Ellerbe's testimony as shown by the record in this case. During the argument made upon the motion to dismiss at the conclusion of the Commonwealth's case after the argument by counsel for defendants, the court said, inter alia:

"The court:

". . . How far can I, sitting as a Judge and jury, credit the testimony of what I might call a self-confessed perjurer, who was, first, incited by a fictitious statement bearing a signature admittedly not genuine, and, secondly, lured by a promise of immunity for his own misconduct, with apparent judicial sanction, and, thirdly, bolstered by pension amounts of $67.00 a week for doing nothing except to adhere to his latest version of certain incidents and applying it against either or both of these defendants in this case, both of whom come into court presumed to be innocent? How

far can I attach any credit to the testimony of Ellerbe?"

I note that Judge Briggs said also, in the Platt case, page 422: "With such a presentment, no argument, however powerful; no criticism, however severe; no effect, however desirable to be impressed upon the criminal classes; indeed, no power on earth can induce us, as the law now stands, to pronounce sentence which will send a prisoner to the scaffold, when our judgment does not approve the verdict, merely because a jury has found him guilty." That is my feeling in this case.

Aside from my conviction that these defendants could in no event be convicted under section 801 of The Penal Code and the legal insufficiency of the evidence, on the merits of the case my conscience would approve no other result than to grant the motion in arrest of judgment and discharge defendants.

Judge Waters informs me that he concurs in the foregoing opinion and is filing his concurring opinion herewith. Accordingly, after consideration of the entire record we enter the following

### Order

And now, to wit, September 11, 1958, defendants' motions in arrest of judgment are sustained and judgment is arrested as to each defendant and they are discharged and the case dismissed.

### Concurring Opinion

WATERS, J., September 11, 1958.—I concur fully in everything that Judge Milner has said in his well considered opinion. To my mind, blackmail and extortion are synonymous terms. The offense was indictable at common law when committed by color of office. This was common law extortion. Section 12 of The Criminal Code of March 31, 1860, P. L. 382, which is the predecessor of section 318 of The Penal Code of June 24, 1939, P. L. 872, made it a statutory offense. A

public officer could no longer be convicted of common law extortion but must be prosecuted under the specific section of The Penal Code. The Act of June 9, 1911, P. L. 833, from which section 801 of The Penal Code was derived, made extortion not by color of office an indictable offense, which it was not at common law. Section 12 of the 1860 code and section 318 of the 1939 code have never been restricted to the receipt of excessive fees by public officers but apply to all forms of extortion by color of office. See Commonwealth v. Clark, 123 Pa. Superior Ct. 277 (1936), wherein it was held that defendant, a State senator, could not be charged with common law extortion but must be prosecuted under section 12 of the 1860 code.

There is serious doubt in my mind also whether the Magistrates' Court Act of 1937 does not preclude the prosecution of a magistrate for this offense under The Penal Code. Section 3 of the Magistrates' Court Act of June 15, 1937, P. L. 1743, 42 PS §1103, provides that: ". . . no magistrate . . . shall demand or receive any money or other thing of value for the performance or nonperformance of any of the duties pertaining to his office other than fees and compensation allowed by law."

Section 44 of the same act, 42 PS §1145, makes violation of the act a misdemeanor punishable by a fine not exceeding $1,500 and/or imprisonment not exceeding three years and dismissal from office. The specific statutory provision precludes prosecution of a magistrate for common law malfeasance, misfeasance and nonfeasance in office: Commonwealth v. Knox, 172 Pa. Superior Ct. 510 (1953). It would seem also to preclude prosecutions under other and more general statutory provisions.

But chiefly I am influenced by my firm belief that judicial sanction should never be given to what I consider the fatal error of the Commonwealth in this case.

I refer to the fact that the principal incriminating evidence against these defendants was, in my opinion, bought and paid for by representatives of the Commonwealth. The record is devoid of any denial of this fact.

In this respect the case is one of first impression to me and the impression is a shocking one. Such methods as were here employed and as outlined in Judge Milner's opinion should never be countenanced.

In the circumstances I would add to our doctrine of jurisprudence, if it is not already there, the vital principle of law that evidence of this character must lack the quality necessary to entitle it to be presented to a jury, and as a matter of law must be completely excluded from consideration.

For this reason I am not troubled by the rule of law that the sufficiency of the evidence must be tested according to the Commonwealth's evidence when considering a motion in arrest of judgment. The Act of June 15, 1951, P. L. 585, sec. 1, 19 PS §871, provides that if after consideration of *the entire record* the court shall decide that there is not sufficient evidence to sustain the conviction, it shall forthwith discharge the defendant and dismiss the case.

In my opinon, there was not sufficient evidence here because no evidence is competent and legal that a judge believes was bought and paid for as in this case. Hence I am not concerned with the fact that our courts have not gone so far as to say that no truth can flow from a corrupt source where there is corroboration. That fact just has no relevancy according to my theory of the case.

I am not challenging the convictions of the trial judge as a juror. Rather, I challenge the right of any jury to consider testimony that was bargained for and paid for before and after delivery. If one may be convicted in this Commonwealth by evidence procured

through the methods here employed, let it not be at the hands of Waters, J.

## Dissenting Opinion

MacElree, P. J., specially presiding.—My colleagues are aware of the fact that I do not agree with the majority of this court that the motions in arrest of judgment should be sustained.

No useful purpose will be served by my filing an extensive argumentative dissenting opinon.

Even after a careful study of the comprehensive and scholarly opinion of Judge Milner and the emphatic and succinct concurring opinion of Judge Waters, I still feel that I cannot concur in their judgment in these matters.

The verdicts which I rendered in these matters indicated what I believed and still believe to have been a just disposition of the same.

While the words "blackmail" and "extortion" may in the opinion of some be synonymous terms, they are nonetheless used as titles to two distinct offenses.

It was and is my opinion that the offense entitled "Extortion" by section 4318 of The Penal Code of June 24, 1939, P. L. 872, is a separate and distinct offense from that entitled "Blackmail", section 4801 of the code.

In my opinion it is not the name used in the title that governs but rather the language of the section which defines the offense.

Defendants in this matter, represented by one of the ablest and outstanding trial lawyers in Pennsylvania, at no time prior to their conviction raised any question, either by demurrer or otherwise, challenging the right of the Commonwealth to indict them under the section entitled "Blackmail."

Neither was there at any time interposed the affirmative defense of the statute of limitations.

While sharing my colleagues' disapproval of the ex-

tremely unorthodox means invoked by the Commonwealth to secure and perpetuate the testimony of the witness, Ellerbe, I do not share the conclusion that his testimony must be utterly excluded as a matter of law, particularly in view of the fact that there was substantial, although not complete, corroboration.

The means that were used might tend to discredit the testimony in the minds of a jury, but I can find no appellate court authority for the legal conclusion reached by the majority of this court that such means impeach the testimony.

This latter question was the subject of extensive argument at the conclusion of the Commonwealth's case and, after hearing argument and after full consideration, I then resolved the question of the credibility of Ellerbe's testimony against defendants.

A majority of this court are of the opinion that Ellerbe's testimony must be utterly excluded and that there was, therefore, lacking sufficient competent evidence to sustain these convictions.

If their conclusions are correct, I concede that to be true as to some of the bills of indictment, i.e., those charging blackmail.

It must be borne in mind, however, that at no time was there a motion to strike out the testimony of the witness, Ellerbe, and I am firmly of the opinion that under all the circumstances his credibility was a question of fact for the judge sitting as a jury.

In my opinion, none of the conclusions reached by Judges Milner and Waters justify setting aside the verdict rendered in bill 1014 in which Thomas E. Costello was charged in three counts with having conspired to intimidate, levy blackmail and extort from one William Marshall, from one Earl Wimberly and from one Esther B. Manuel.

For the foregoing reasons I must respectfully dissent.