Commonwealth *v.* Edelman, Appellant.

314

Argued January 8, 1948. Before RHODES, P. J., RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT and FINE, JJ., absent.)

*Thomas D. McBride,* for appellant.

*Americo V. Cortese,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY RENO, J., March 15, 1948:

Appellant was convicted upon 15 indictments charging burglary, larceny, receiving stolen goods, and conspiracy to commit burglary. They covered nine separate depredations, and were tried together in one consolidated trial. Sentence was imposed only in No. 503 January Sessions, 1946. In that indictment he was charged with burglary, larceny and receiving. He was found guilty of burglary; no verdict was returned on the larceny charge; and he was acquitted of receiving.

The prosecution was the culmination of a series of burglaries committed in the Philadelphia area covering the period of more than a year. There is no question but that the burglaries were committed, and the identity of the active participants has been established. It is likewise undisputed that appellant's motor equipment was used in the nefarious business. The only open question was whether appellant had guilty knowledge of the purpose for which his equipment was used.

The operations of the miscreants followed a fixed pattern. They hired one of appellant's trucks and with it cruised around the city until they discovered a loaded and unattended truck, when they appropriated its contents, carried them in appellant's truck to their own headquarters and subsequently disposed of them. The value of the goods ranged from $2,000 in one transaction to $45,000 in another; and the aggregate of the nine burglaries, according to the Commonwealth's brief, was $207,200.

Appellant was engaged in the wholesale fruit and produce business, and for that purpose owned and leased several trucks. He acquired a trailer and tractor by a lease from a Pittsburgh concern through the solicitation of David Joseph, a co-defendant, and this, with his other equipment, was kept on an open lot near his place of business, and used in the thefts. After the arrest of the burglars, they revealed that some or all of appellant's equipment was employed by them. Appellant was not present at the scene of the thefts and his participation in the crimes consists of furnishing the trucks for a consideration and thereby knowingly aiding and abetting the crimes.

In No. 503, the case immediately under review on this appeal, it was stipulated that on December 16, 1945, between the hours of 7 a. m. and 5 p. m., there was stolen from a trailer in the garage of a Seaboard Freight Lines a quantity of whiskey valued at $12,000. Concerning this transaction, Morris Milarsky, a co-defendant who pleaded guilty, testified that on that date, after arranging for an interview by telephone, he met appellant at the latter's office and told him he "wanted to work and would like to hire the truck." Appellant told him he did not have an extra key for the truck, and they went to a locksmith who made a key, which he turned over to Milarsky with the truck. After some discussion between them in which appellant claimed "there was $500 due him for some arrangement Dave [Joseph] had made with him in reference to the Mundy theft", Milarsky "guaranteed to give him $1,000 if we worked, and if it was worth while; if we could see our way clear, we would give him the $500 that was outstanding." Using appellant's truck Milarsky with Joe Heimowitz, another self-confessed accomplice, stole the load of whiskey which they sold for $5,700 out of which Milarsky paid appellant $1,000 for the use of his truck for less than 24 hours.

Appellant categorically and emphatically denied all the charges. The evidence against him consisted largely of the testimony of accomplices. The cases were submitted to the jury in an eminently fair and comprehensive charge, and no part or feature of it has been included in the statement of the questions involved in this appeal. Judge ALESSANDRONI carefully and at length explained the correct principles of law by which the credibility and acceptability of the testimony of accomplices is to be judged, and vigorously urged its scrupulous scrutiny. Nevertheless, the jury, properly as we think, convicted appellant upon all the indictments.

Appellant's first contention is the evidence does not sustain the verdict. This is based upon apparent contradictions in Milarsky's testimony. He had previously testified in hearings before a magistrate and Judge ALESSANDRONI to the general effect that he had not informed appellant of the purpose for which the truck was to be used. When confronted upon cross-examination with these statements he answered that the prior testimony was true. The precise question raised by this circumstance does not appear to have been presented to the court below, and it need not long detain us.

The Seaboard burglary was the last crime committed and the last one tried. The jury had before it evidence bearing upon the whole series of related and identical crimes before it reached the particulars of the case under review, and in determining appellant's culpability for any one offense it was authorized to consider the evidence relating to all the crimes. *Com. v. Joyce,* 159 Pa. Superior Ct. 45, 46 A. 2d 529. This evidence disclosed a gigantic conspiracy, consummated by at least nine burglaries, and always involving the use of appellant's equipment. Although Milarsky alone arranged for the use of the equipment in the Seaboard case he had been with David Joseph when appellant agreed to supply the equipment for the first theft. By the time the Seaboard crime was perpetrated the conspirators under-

stood each other so perfectly that it was unnecessary for Milarsky to inform appellant the precise purpose to which his truck would be put, and doubtless did not do so. He testified that he told appellant that he "wanted to work," thieves' argot for an intended crime, and "guaranteed to give him $1,000 if we worked." This part of his testimony Milarsky neither repudiated nor contradicted, and thus, while his final statement was that he had not told appellant the exact objective for which the truck would be employed, there was sufficient evidence from which the jury could legitimately infer that appellant nevertheless comprehended the "work" in which it would be engaged.

The second contention relates to the refusal of the court below to compel the Commonwealth to produce pre-trial statements made by the accomplices to the police. Appellant, who had no knowledge of the contents of the statements and to that extent was projecting a fishing expedition, contended that if upon production they were found to contain statements in conflict with the testimony of Milarsky and the other accomplices he was entitled to introduce them into evidence to impeach their credibility. We lay to one side one of the reasons which moved the court below to deny appellant's demand, and only when the question is squarely raised shall we decide whether sound public policy forbids the production of an accomplice's police statement at the call of a co-defendant. It is enough to say now that if the learned trial judge was wrong in that particular, it was harmless error. As already stated, Milarsky's cross-examination disclosed that at previous hearings he had omitted to testify that he had informed appellant of his purpose, and if he also omitted that factor from the statements he made to the police that circumstance would have been at best only cumulative evidence. The ruling of the court did not contribute to his conviction, nor deprive appellant of the fundamentals of a fair trial.

The doctrine of harmless error likewise rules the final contention. Under cross-examination, appellant admitted, without objection, that the trucks used in the conspiracy were registered at various addresses in New Jersey although his residence and place of business were in Pennsylvania. Over his objection, he identified the certificates of registration, and they were admitted into evidence upon the Commonwealth's offer. They did not contradict, but rather confirmed, appellant's testimony, but appellant argues that they should not have been admitted because thereby the Commonwealth was enabled to argue to appellant's prejudice that he had been guilty of the distinct and unrelated crime, denounced by the law of New Jersey, of giving a fictitious address in his applications for registration. Had appellant objected to the inquiry into his action in registering the trucks in New Jersey, his contention might have considerable force. But, in view of his admissions on cross-examination, without objection, which seemingly opened the door for further evidence, introduction of the certificates themselves was mere surplusage, and consequently, if not an invited error, a harmless error.

Our careful study of the entire record has engendered the firm conviction that the trial judge diligently guarded appellant's rights and that he had a fair trial notwithstanding that technical errors may have been inadvertently committed. Consequently the recent forceful pronouncement of Chief Justice MAXEY in *Com. v. Barnak*, 357 Pa. 391, 419, 54 A. 2d 865, is pertinent: "Taking an appeal in criminal cases is not a game in which the appellant wins if he can show that the trial judge fell a few degrees short of perfection in the conduct of his trial. This court has consistently refused to reverse convictions of murder in the first degree, even with the death penalty imposed, for errors in the conduct of the trial or in the admission of evidence or in the judge's charge, when these errors did not deprive the defendant of the fundamentals of a fair trial."

The judgment and sentence are affirmed, and it is ordered that the defendant appear in the court below at such time as he may be called there and that he be committed by the court until he has complied with his sentence or any part of it which had not been performed at the time his appeal was made a supersedeas.