Commonwealth *v.* Russo et al., Appellants.

472

Argued September 28, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT and ERVIN, JJ. (WOODSIDE, J., absent).

474

*S. V. Albo,* for appellants.

*W. H. Colvin,* Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, *Charles D. Coll* and *Harry A. Estep,* Special Deputy Attorneys General, for appellee.

OPINION BY HIRT, J., January 14, 1955:

The appeals of the four defendants from their convictions and sentences in the court below were argued together before us. Although the defendants were tried separately, the charges against them had much in common on the facts and the law. For this reason their appeals may be disposed of appropriately in this one opinion.

The appellants were police officers of the City of Pittsburgh assigned to a special detail known as the "Vice Squad". Their duties in the main were to apprehend and prosecute homosexual perverts found principally in the rest rooms of theaters, hotels or other public buildings, for the most part in downtown Pittsburgh. The officers worked in pairs at night and al-

ways in plain clothes. Arrests were made of offenders who solicited the officers to commit sodomy as well as those who on occasion were observed in the act of committing that offense.

Responding to an aroused public opinion in the City of Pittsburgh, the Attorney General of the Commonwealth petitioned the Court of Quarter Sessions of Allegheny County for the calling of a Special Investigating Grand Jury. As one of the grounds alleged, the Attorney General's petition charged that there existed a relationship between police operations and the protection of vice in the City of Pittsburgh. In September 1950 a special grand jury was summoned and convened in response to the petition and, within the field of the matters given it in charge by the court, an investigation of the activities of the officers composing the Vice Squad of the Pittsburgh Police Department was made. Thereafter on January 2, 1952, the grand jury made a presentment recommending the indictment of these four appellants, as well as other police officers, for perjury. This recommendation, as to the present appellants was made upon findings by the grand jury that they had made arrests of alleged homosexuals, charging them with solicitation to commit sodomy; that before the committing magistrate, the arresting officer in each instance had made out a prima facie case by his sworn testimony stating unequivocally that the prisoner, under circumstances related by the officer, had solicited the commission of sodomy upon him. It was also found that when subsequently called before a regular indicting grand jury the officers changed their testimony in essential respects and, usually on an admission by the arresting officer that there was not enough evidence to make out a case against the alleged sodomist, the grand jury ignored the bills. Motions to quash the presentment, insofar as it rec-

ommended indictment of these appellants for perjury, was refused by the lower court. Application was then made to the Supreme Court of Pennsylvania for a Writ of Prohibition which also was, on March 20, 1952, denied. Thereupon indictments were drawn charging each of these appellants not only with perjury but, in separate bills, with obstructing public justice although the investigating grand jury had made no recommendation for prosecutions on this additional charge.

We are unable to agree that the defendants were deprived of constitutional rights in the proceedings leading up to their indictment. They contend that they had no notice that the charges against them would be submitted to the 1952 March grand jury. The Attorney General in the lower court stated that notice was given them on March 6, 1952. However that may be, in June 1952 motions to quash all of the bills of indictment returned by the grand jury against defendants McArdle and Scanlon, were refused by the lower court without prejudice. And as the charges against each of the present four defendants came on for trial new motions to quash were filed, all of which were refused.

In each instance, the indictment for obstructing public justice was based upon the alleged false testimony of the police officer before the indicting grand jury. Although indictments for that offense were not specifically recommended in the presentment, yet the activities of the Vice Squad was one of the subjects specifically submitted to the special grand jury for investigation. The indictments for obstructing public justice were submitted to the indicting grand jury as Attorney General's Bills specifically, in each instance, with leave of court as evidenced by endorsement to that effect on each of the indictments. Thus the objection is removed, under the circumstances, that the addi-

tional charges were not included in the recommendation of the special grand jury. Either the transcript of a magistrate or an order of court is a sufficient basis for an indictment. Quite obviously, the same exigencies and the same public concern which led to the perjury indictments on recommendation of the investigating grand jury, justified the court in its discretion in ordering or allowing the related bills of obstructing justice to be submitted to the indicting grand jury along with the perjury indictments. *Commonwealth v. Jobe,* 91 Pa. Superior Ct. 110. As to defendants Tanser and Russo, in any view, the motions to quash based on irregularity of the proceedings which preceded the indictments, when delayed until trial, came too late. Cf. *Commonwealth v. Brennan,* 193 Pa. 567, 44 A. 498; *Commonwealth v. Mallini,* 214 Pa. 50, 63 A. 414.

According to the record before us, of nine indictments consolidated for trial against Alan Tanser he was sentenced on his conviction of perjury on Bill 645 and on his convictions of obstructing public justice on Bills 675, 676 and 677. No two of the Bills were based on the same acts of the defendant. They related to four separate prosecutions of four individuals for distinct crimes of soliciting the commission of sodomy. Guy Russo was found guilty on five indictments against him, three of which charged perjury and two obstructing public justice. Martin J. Scanlon was acquitted on three indictments charging perjury but was convicted of obstructing public justice on two other bills. The defendant Bernard J. McArdle similarly was acquitted of two charges of perjury but was convicted on two bills charging him with obstructing public justice. Concurrent sentences of four months imprisonment were imposed on Scanlon and on McArdle on each conviction of obstructing public justice. Tan-

ser was sentenced on a single perjury conviction to a term of imprisonment of from six months to one year. Sentences of imprisonment for six months to be served concurrently with the above sentences for perjury, were imposed on the three other convictions of Tanser for obstructing public justice. Russo was sentenced to concurrent terms of imprisonment on each of the perjury convictions. He was also sentenced to concurrent terms of six months each on the two convictions of obstructing public justice.

There is no merit in the contention that the mere consolidation in itself of the perjury indictments for trial with the charges of obstructing public justice, as to each of these defendants, constituted reversible error. It is the settled rule that the consolidation of indictments charging separate and distinct offenses is largely a matter within the sound discretion of the trial judge and where the indictments are closely related his exercise of discretion will not be reversed unless it is clearly shown that an appellant has been prejudiced thereby. *Commonwealth v. Lehman,* 166 Pa. Superior Ct. 181, 70 A. 2d 404; *Commonwealth v. Kaysier,* 166 Pa. Superior Ct. 369, 71 A. 2d 846; *Commonwealth v. Schultz,* 168 Pa. Superior Ct. 435, 79 A. 2d 109. And under the modern practice related felonies and misdemeanors may be consolidated for trial before the same jury. Here there was positive testimony before the committing magistrate of the solicitation of sodomy, as against testimony so softened before the grand jury as to fail to make out a prima facie case against any of the sex offenders charged with crime. The consolidation was especially appropriate in these cases for the proofs followed the same pattern and were all interrelated. Evidence establishing the charge of obstructing public justice in each of the cases against a defendant would be admissible in

the trial of all of the others to show that the acts were intentional and wilfull, not accidental; to prove motive; to show a plan, design or scheme, and a common purpose and to rebut any inference of mistake. *Goersen v. Commonwealth,* 99 Pa. 388; *Commonwealth v. Chalfa et al.,* 313 Pa. 175, 169 A. 564.

It is contended that the conviction of Tanser and Russo for perjury in each instance was induced by incompetent evidence and that the proofs are insufficient to support convictions on that charge. The conviction of Tanser for perjury on Bill 645 rests upon proof of two conflicting statements made by him under oath in the case of Commonwealth v. George Garis. Tanser had arrested Garis, and his testimony before the committing magistrate on December 14, 1950, the morning after the arrest, was reported by a stenographer assigned to the "Morals Court". Reading from her notes she testified that this was the statement in its entirety given by Tanser under oath at the preliminary hearing of Garis on the charge of soliciting the commission of sodomy: "Twelve-thirty last night, I met this man in the Harmony Bus Station and he made a proposition to me and then he turned around and told me he would get a room at the Fort Pitt Hotel. He got Room 528 and told me to come up. So I went up and he had the bed clothes pulled back and took his clothes off and put his hand on my private parts and he said he would commit sodomy on me." This testimony transcribed by the stenographer from her notes also appears on the magistrate's transcript, with the addition of a statement of George Garis, following the officer's testimony, as reported by the stenographer to this effect: "I am an insurance agent. I admit this." The testimony of Tanser under oath before the indicting grand jury contradicting his testimony before the committing magistrate was thus reported by the court stenographer

assigned to the grand jury: "Q. Are you familiar with the charge of solicitation to commit sodomy brought against George Garis on December 14, 1950? . . . A. Well, on Thursday, December 14, and that was about 1:00 o'clock, I met this man on the street and he had been drinking a little bit and he said to me, he asked me to come up to his room at the Fort Pitt Hotel, and I went up with him. He wanted me to have a drink. In the meantime, he went up and gave me the room number and said, 'Come up and get a drink as soon as you can,' and I thought this man was trying to solicit me and I told my two other partners to come up and give us a reasonable length of time and bust in and then went up and we were drinking there and he took off his coat and made himself comfortable and he didn't solicit me or nothing like that. I thought he was going to and my partners rushed in the room too soon and I put him under arrest. I thought he was going to solicit me. Q. But did he? A. No. Q. He didn't solicit you in any way? A. No. Q. You are certain of that? A. Yes. Q. And this charge of solicitation to commit sodomy, you don't have enough evidence? A. No."

The testimony of Guy Russo before the magistrate after the arrest of one Guy Foster, the subject of Bill 654, definitely and positively charged Foster with soliciting sodomy. The same may be said of Russo's testimony at the preliminary hearings on similar charges against Adam Baker and John Weller, involved in Bills 711 and 712. Russo's testimony before the grand jury as to Foster, Baker and Weller, contradicted his testimony before the committing magistrate and in effect made it necessary for the grand jury to ignore all three bills. The magistrate's transcripts containing Russo's testimony as given before him were admitted in evidence over objection. The transcript in the one

case contains this statement made by Foster as reported by the stenographer in reply to Russo's testimony: "I met this man and we were talking about the high prices on clothes. Then we went up in the room. When we were up in his room we were talking about his army experiences. I don't admit this" (referring to Russo's testimony that Foster solicited the commission of sodomy). The statement of Baker as reported in the magistrate's transcript in his case was: "Am a clerk. Never was arrested before. I had seven bottles of beer yesterday." Weller's statement as reported on the transcript was: "Work for Danford Company. I have nothing to say." The statements of Baker and Weller neither admitted nor denied the charges. As in the Tanser case the magistrate's transcripts as exhibits were sent out with the jury.

The two-witness rule as to the proof of perjury prevails in Pennsylvania. *Com. v. Gore,* 171 Pa. Superior Ct. 8, 90 A. 2d 405. But it has no application where as here, there is proof that the defendant made two contradictory statements under oath. When such conflicting statements are made there is no doubt that the person making them has committed perjury for he establishes it, but the difficulty is as to which of the two statements is the false one. *Com. v. Bradley,* 109 Pa. Superior Ct. 294, 167 A. 471. In such case, the problem is reduced to one of determining whether there is *some* competent evidence from which the jury might find that the perjury was committed on the occasion charged in the indictment. *Com. v. Sumrak,* 148 Pa. Superior Ct. 412, 25 A. 2d 605. The evidence necessary to identify the perjured statement may be direct or circumstantial but it must be competent.

Appellant Tanser insists that in the trial of the charges against him the Commonwealth was bound to call Garis as its witness who was accused in the Morals

Court of soliciting sodomy. He contends that he had the right of confrontation by Garis who made the statement in response to the officer's testimony and that a denial of that right made the magistrate's transcript inadmissible because of hearsay. This contention wholly misconceives the purpose of the offer of the transcript which contained the statement of what the alleged sodomist said at the preliminary hearing before the magistrate. Actually an effort was made to locate and produce Garis at the trial of Tanser but he could not be found. Regardless of that, however, the Commonwealth was not obliged to produce him. The circumstances under which the two conflicting statements were made, which are involved in the *Tanser* case, throw light on the question as to which of them was false. And in our view on the trial of Tanser the court did not err in admitting the magistrate's transcript in evidence or in allowing it to go out with the jury because of the statement of Garis appearing upon the transcript. The Commonwealth had the right to develop all of the circumstances tending to prove that the sworn statement of this officer was true, when he testified that Garis, arrested for soliciting sodomy, was guilty of the charge. In general if an utterance can be used as circumstantial evidence, the hearsay rule is not applicable. In this case what Garis said in admitting his guilt was admissible under the rule applicable to Vicarious Admissions, IV Wigmore on Evidence, 3rd Ed., §1069 et seq. (Cf. *Becker v. Philadelphia,* 217 Pa. 344, 348, 66 A. 564), as competent evidence of the truth of Tanser's accusations made against him under oath at that time. And although the stenographer had no independent recollection of the statement made by Garis before the magistrate, even when aided by her notes, yet she testified that what was said by him was accurately reported by her. Accordingly

the memorandum itself appearing on the magistrate's transcript, which was made from her notes when what occurred at the hearings in the *Garis* case was fresh in her mind, was admissible for the above purpose under the rule of past recollection recorded. *Christian Moerlein B. Co. v. Rusch*, 272 Pa. 181, 116 A. 145. The record as a whole in the *Tanser* case was sufficient to identify the testimony before the grand jury as the perjured statement, as the jury found.

The magistrate's transcripts however were improperly admitted in the trials of the three bills charging Russo with perjury. Foster according to his statement in the transcript in effect denied the charge against him. Accordingly the conviction of Russo on Bill 654 involving the Foster case must be reversed on the authority of our recent case of *Commonwealth v. Mudd*, 176 Pa. Superior Ct. 250, 107 A. 2d 599. Adam Baker before the magistrate neither admitted nor denied the truth of Russo's sworn statement charging him with the solicitation of sodomy. The same may be said of the response of John Weller to Russo's testimony as to him. Accordingly the admission of their statements on the transcripts was clear error. While in general when one charged with a crime is free to speak but remains silent and does not deny the accusation, his silence is a circumstance bearing upon the validity of the charge. But it is equally true that an accused at a judicial inquiry into his guilt may hold his peace in the face of an accusation against him, and his silence cannot be regarded as any evidence of his guilt. This rule is applicable to a defendant charged with crime before a committing magistrate. *Commonwealth v. Zorambo*, 205 Pa. 109, 54 A. 716. For want of competent proof that Russo's sworn statements as to Baker and Weller before the magistrate were true, the conviction and sentence of Russo on Bill 711 and on Bill 712 must be reversed.

One convicted of perjury may not be convicted of obstructing public justice on the same evidence in both instances. The Act of June 24, 1939, P. L. 872, 18 PS §5104 provides: "In all cases where a remedy is provided or duty enjoined, or any thing directed to be done by the penal provisions of any act of assembly, the direction of said act shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act in effect." Perjury, under §322 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4322, and the common law offense of obstructing public justice are two distinct offenses. We have stated the essential elements of the crime of perjury thus: ". . . (a) An oath to tell the truth must be taken by the accused, and (b) administered by legal authority, (c) in a judicial proceeding (or statutory affidavit). (d) The accused must have testified in such proceeding, and (e) his testimony must be material to the judicial proceeding. (f) The testimony assigned as perjury must be false, and (g) must be given wilfully, and corruptly, and with knowledge of its falsity (or given recklessly), and for the purpose of having it believed": *Commonwealth v. Billingsley*, 160 Pa. Superior Ct. 140, 50 A. 2d 703.

Inasmuch as perjury itself is one of the means of obstructing justice, if one is convicted on facts which the jury concludes amounted to perjury, now a felony by statute, the lesser common law misdemeanor under the above statute is merged therein so as to prevent the imposition of a separate penalty on the latter. Obstructing public justice is a common law offense which may take a variety of forms. And in the course of the trial of one charged with crime it may be committed by the softening or slanting of testimony previously given or by suppression or deleting of evidence

or by false swearing, less than perjury, which also is a common law offense. Cf. Burdick, Law of Crime, §323.

Accordingly the convictions of Tanser for obstructing public justice must stand since the jury in each instance found the testimony, by which it was accomplished to be false although not amounting to perjury as charged in other indictments. Where perjury is charged in one indictment and obstructing public justice in another based upon the same facts, a conviction of either charge, but not both, may be sustained. Cf. *Commonwealth v. Knox,* 172 Pa. Superior Ct. 510, 94 A. 2d 128.

The facts in the cases against Scanlon and McArdle followed the same pattern as the Tanser and Russo cases but there was this difference in the result: Scanlon and McArdle were acquitted on the perjury charges but were convicted of obstructing public justice by means of having altered their prior testimony under oath in such a manner as not to meet all of the requirements of perjury in the eyes of the jury. As previously noted the obstructing of public justice does not necessarily amount to perjury and the rule requiring the testimony of two witnesses or of one witness with corroborating circumstances does not apply.

In the *McArdle* case however, the two offenses of obstructing public justice, of which he was convicted, were committed in 1949. In the court below it was unsuccessfully contended that the prosecutions were barred by the two-year limitation of the Act of April 6, 1939, P. L. 17, 19 PS §211. The bar of the statute is again raised by McArdle in the present appeal. The relationship of a police officer to the municipality by which he is employed is not "an essential element" of the crime of obstructing public justice. Anyone may be guilty of the offense and it is clear that the Act of

May 16, 1945, P. L. 582, 19 PS §213 has no application. The lower court ruled that defendant's criminal conduct amounted to misfeasance in office and accordingly the appropriate period of limitation was six years as fixed by that portion of the 1939 amendment, 19 PS §211, supra. But the insuperable difficulty in the way of adopting the lower court's conclusion is that these defendants were not indicted for *misfeasance* in office nor could they have properly been so indicted for the reason that a municipal police officer in Pennsylvania is merely an employe and not a public officer within the provision of the 1939 Act. *Commonwealth v. Black,* 201 Pa. 433, 50 A. 1008; *Zeloyle v. Bettor,* 371 Pa. 546, 91 A. 2d 901; *Donahue v. Philadelphia,* 157 Pa. Superior Ct. 124, 41 A. 2d 879. It follows that McArdle's convictions and sentences on the obstructing of public justice charges must be set aside by reason of the statutory bar of that Act.

The judgment of sentence of Alan Tanser on Bill 645 for perjury and the judgments of sentence on convictions of obstructing public justice on Bills 675, 676 and 677 are affirmed.

The judgments of sentence of Guy Russo on Bills 654, 711 and 712 on convictions of perjury are reversed. The judgments of sentence for obstructing public justice on Bills 713 and 714 are affirmed.

The judgments of sentence of Martin J. Scanlon convicted of obstructing public justice on Bills 742 and 743 are affirmed.

It is ordered that each of the above defendants appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentences or any part of them that had not been performed at the time the appeal was made a supersedeas.

The judgments and sentences of Bernard J. McArdle on Bills 651 and 686 are reversed.

WOODSIDE, J., took no part in the consideration or decision of this appeal.