Commonwealth *v.* Breslin et al., Appellants.

Argued September 19, 1960.   Before RHODES, P. J.,
WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY,
JJ. (GUNTHER, J., absent).

*David Kanner,* for appellants.

*Harry C. Fithian, Jr.,* Second Assistant District Attorney, with him *Paul W. Reeder,* District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., November 17, 1960:

These appeals are from judgments of sentences imposed by the Quarter Sessions Court of Lycoming County on verdicts of guilty found by a jury on the joint trial of the four appellants on five indictments.

At No. 146 May Sessions 1959, the four appellants were charged jointly with conspiracy to burglarize, burglary, larceny, and receiving stolen goods in connection with the residence and property of E. B. Mc-Cuaig in Muncy, Pa. Verdicts of guilty were returned on the conspiracy and receiving stolen goods charges but not guilty on the burglary and larceny charges. Since motions for arrest of judgment were granted as to Stocker and Laverty on the charge of receiving stolen goods, only the guilty verdict on the conspiracy charge remained against them. All other motions for arrest of judgment and for new trials were refused.

At 147, 148, 149, and 150 May Sessions 1959, each defendant was separately charged with conspiracy to burglarize, burglary, possessing burglary tools, and receiving stolen goods in connection with the residence and property of Dr. Paul Seibert in Muncy, Pa. (an adjoining neighbor of McCuaig) and of the house and dairy office of Clyde O. Mosteller, who operated the

Mosteller dairy in Williamsport. The jury returned identical verdicts as to each, viz., guilty on the conspiracy, possessing burglary tools, and receiving stolen goods charges, but not guilty on the burglary and larceny charges. Motions for the arrest of judgments on these verdicts or for new trials were refused and sentences of imprisonment were imposed.

Summarizing the above results, we have judgments against all four appellants for conspiracy to burglarize the residence of McCuaig, Seibert, and Mosteller, for possessing burglary tools, and receiving stolen goods from Seibert and Mosteller. In addition, Breslin and Burkowski have judgments against them for receiving stolen goods of McCuaig.

These appeals raise three questions: (a) sufficiency of the evidence, (b) propriety of a joint trial, where alleged prejudicial error was committed by the unrestricted admission of incompetent testimony; and (c) prejudicial errors by reason of (1) the violation of an order of sequestration of witnesses, (2) newspaper accounts of the trial, and (3) the court's charge.

The facts as established by the verdicts appear as follows:

On July 4, 1959, between 5:00 and 7:00 p.m., Laverty and Stocker arrived at the City View Motel, south of Williamsport, in a black 1959 Ford sedan. They represented themselves as brothers to the manager and were being shown room 10a when Breslin and Burkowski arrived in an Oldsmobile and approached them near 10a. Upon inquiry by the manager, he received an affirmative answer that all were together. He, thereupon, assigned them adjoining rooms 5a and 6a. Laverty paid for both rooms, and shortly thereafter was seen in the company of Burkowski going to a restaurant nearby. The whereabouts of the defendants were not shown from then until the

police raided their rooms the next morning, at about 5:30 or 6:00 o'clock. The motel and the Ford and Oldsmobile automobiles had been watched from 2:30 a.m. on, during which time the automobiles had not been moved nor the defendants seen.

On raiding the two rooms, the police found Breslin and Burkowski sleeping in one room (5a) and Laverty and Stocker in the other (6a).

The McCuaig home was burglarized between the night of July 3, and the morning of July 6; the Seibert home between 4:00 p.m. and 11:00 p.m. on July 4; and the Mosteller home and office between 4:30 p.m. on July 4 and 5:30 a.m. on July 5.

There was missing from the McCuaig home seven silver dollars, a white gold lady's ring, and some old coins, including a silver dollar, a quarter, and an Indianhead penny.

There was missing from the Seibert home $35.00, a wallet, syringe, and a small play coin. The money had been in a container, in which there had also been some small nails used to hang curtain rods.

There was missing from Mosteller's home some petty cash of an undetermined amount, $1,600.00 in change and bills (collection by dairy drivers), a collection of silver dollars totaling $100.00, and ten or twelve large paper bills of the variety used years ago.

A black 1959 Ford sedan identified as being similar to that used by Laverty and Stocker was seen stopping near the McCuaig and Seibert homes under circumstances to arouse suspicion around 10:45 p.m. on July 4. The evidence does not disclose whether either of the defendants' cars was taken from the parking lot of the motel between the time they arrived there and 2:30 a.m. on July 5, when they were first observed there by the police.

When the police raided the rooms occupied by the defendants, they found the following:

In room 5a occupied by Breslin and Burkowski were found the following items: the ring of Mrs. McCuaig (found on the dresser), a bag of coins containing two small nails identified as similar to the nails in the container in the Seibert home, a play coin similar to that taken from Dr. Seibert, $314.00 in bills, of one, five, and ten dollar denominations, and a bag containing 84 silver dollars and a $5.00 gold piece (found in the drawer of a night stand near Breslin's bed), a bag of currency, $668.00, of one, five, ten, and twenty dollar denominations (found in night stand near Burkowski's bed), two even piles of 84 silver dollars stacked on the dresser with one having attached to it a piece of tape identified by Mosteller as having been presented to him as a Christmas gift, a bag of small change totaling $139.57, including Indianhead pennies and ten or twelve large size bills. The Indianhead pennies corresponded in number and date with the ones listed by Mosteller, and a large copper coin was clearly identified by Mosteller.

In room 6a occupied by Laverty and Stocker the wallet of Dr. Seibert and $487.00 were found in a pair of trousers which were claimed by Laverty to be his.

The only other findings of importance in the rooms was a pair of black shoes found in 6a belonging to Stocker with mud and grass on them, which on analysis corresponded with mud and grass of the same kind taken from an area 65 feet from the Seibert home.

In the trunk of the Ford there were found three pairs of brown cloth gloves, three dark reversible jackets, three caps, a ten inch screwdriver, a sledge hammer, two flashlights, a small hatchet, two crowbars or punch bar, one large and one small, a reversible jack, and five chisels.

In the Oldsmobile there was a box containing four pairs of cloth gloves and two flashlights. An expert testified that the sledge hammer, punch bars, metal chisels and gloves were commonly used in burglaries.

It would appear that the jury could not determine which of the four had actually committed the burglaries, and therefore refused to find anyone guilty of the crimes, although it might well have done so on the theory that an inference may be drawn that a person whose possession of recently stolen property is unexplained otherwise is the thief. *Commonwealth v. Salkey,* 185 Pa. Superior Ct. 148, 137 A. 2d 924. We shall discuss the matter of possession later in this opinion.

However, failure to prove an overt act as a result of the conspiracy is not fatal since the crime of conspiracy is a distinct crime and is committed regardless of whether the fraud or illegal act contemplated ever occurs. *Commonwealth v. Weldon,* 159 Pa. Superior Ct. 447, 48 A. 2d 98. Further, circumstantial evidence is sufficient, and generally is the only way the state can establish a conspiracy. *Commonwealth v. DeMoss,* 401 Pa. 395, 165 A. 2d 14. Such evidence includes the relation, conduct, and circumstances of the parties. *Commonwealth v. Evans,* 190 Pa. Superior Ct. 179, 154 A. 2d 57; *Commonwealth v. Horvath,* 187 Pa. Superior Ct. 206, 144 A. 2d 489.

The evidence in this case is sufficient to sustain the charges of conspiracy. The fact that three burglaries had recently been committed within a period and area when and where the defendants could have participated in them, the fact that the four were together as established by their own acts and admissions and by Laverty paying for both rooms, the fact that stolen property from each burglary was found in their adjoining rooms and that each car in which they were traveling contained equipment which, as testified by an

expert, could and was of the type commonly used by burglars, plus the additional evidence of the presence of a Ford of similar description, and the mud and grass on Stocker's shoes, is such that upon consideration of it a jury could conclude that the group had conspired to commit collectively, individually, or have some one else commit the burglaries from which they shared the ill-gotten gains. We do not disagree with appellants' argument that circumstantial evidence must not only be consistent with guilt but must also be inconsistent with innocence, but in this case we fail to see how the circumstances can be interpreted as an indication of innocence.

Nor do we find any merit in appellants' argument that they were charged with receiving stolen goods which they had themselves taken. Such is not the case. They were charged in certain counts of the indictments with being the thieves, but the receiving stolen goods count was in the alternative, to cover the situation that might arise if the facts proved some one else to be the taker. The wording of the indictments on the counts of receiving stolen goods is general and makes no reference as to the taker but only as to the receiver. This is approved procedure. *Henwood and Arney v. Commonwealth*, 52 Pa. 424; *Commonwealth v. Quinn*, 42 Pa. Superior Ct. 490; *Commonwealth ex rel. Scasserra v. Keenan*, 175 Pa. Superior Ct. 636, 106 A. 2d 843. The joinder of counts for larceny and receiving stolen goods is specifically authorized by §24 of the Act of 1860, March 31, P. L. 427, §24, 19 P.S. §411. Further, under §11 of that act objections for any formal defects in an indictment must be taken before verdict, not afterwards. 19 P.S. §431.

There is also no merit in their further argument that the verdict of guilty on receiving stolen goods should not be sustained on mere possession. There is

much more than mere possession established by the evidence in this case, as we have previously indicated. Further, there is no need to distinguish between the individuals as to who possessed the goods. Joint possession is recognized and there is sufficient evidence to establish joint possession in this case. Possession may also be constructive and temporary. 76 C.J.S., Receiving Stolen Goods, §6. *Commonwealth v. Thurman,* 167 Pa. Superior Ct. 642, 76 A. 2d 483; *Commonwealth v. Edelman,* 162 Pa. Superior Ct. 313, 57 A. 2d 603; *Commonwealth v. Wojdakowski,* 161 Pa. Superior Ct. 250, 53 A. 2d 851; *Commonwealth v. Lindie,* 147 Pa. Superior Ct. 335, 24 A. 2d 39.

We are of the opinion that under the circumstances presented by the evidence the jury was justified in finding that these articles stolen from the several homes were in the joint possession of all, regardless of the fact that the lower court excluded Stocker and Laverty from participation in the receiving stolen goods of McCuaig.

The same is true in regard to the possession of burglary tools. This case is ruled by *Commonwealth v. Thurman,* supra, holding that the tools need not be in the manual possession of the party, as in carrying concealed weapons, and may be in joint possession. It was for the jury to decide whether the tools were such as intended by the statutes, to be used for a felonious purpose, particularly in the burglaries committed in these cases. The evidence, we think, is sufficient to support the jury's findings.

The motions in arrest of judgment were properly dismissed. We shall therefore limit our further discussion to alleged prejudicial errors in the trial of the cases.

Complaint is made that the lower court refused to sever the indictments and ordered a joint trial. This

argument is predicated on the lack of evidence that the four men were together, that the cars ever left the premises, and that the only evidence of burglary was the wallet of Dr. Seibert found in the room occupied by Burkowski and Breslin. We have already indicated that there is much more evidence to join the parties. There is ample proof of the identity of other stolen property. There are the silver dollar with the tape attached, the small nails, the stacks of silver dollars, the large bills, the evidence definitely identified by Mr. Mosteller, the small play coin, besides the wallet, all of which was for the jury to consider, even though it may have been circumstantial.

This subject was discussed recently by Judge ERVIN of this Court in *Commonwealth v. Grosso*, 192 Pa. Superior Ct. 513, 162 A. 2d 421, and we deem it unnecessary to repeat his conclusions. Since they are in point under the facts of this case, we apply them here and find no error by reason of consolidation or restriction of evidence.

The testimony in relation to Dr. Seibert's not having seen his wallet in his home for several months and the remarks of Mr. Hasson referred to were not prejudicial. It would have made no difference whether Dr. Seibert was currently carrying his wallet or whether he had mislaid it for months at home. It nevertheless was stolen and it was for the jury to determine if it had been recently stolen. No explanation to the contrary was offered by any of the defendants, and although the Commonwealth had the burden of showing it had been recently stolen, the other circumstances, namely the recent breaking and entering of his home, were sufficient to support the jury's verdict. Regardless of whether all four appellants heard Mr. Hasson's question of whether they were all together, nevertheless by their actions in leaving Room 10a and occupying

adjoining rooms 5a and 6a, with Laverty paying for both, they demonstrated that they were all together and were not prejudiced by the court's ruling.

The determination of whether there is a violation of an order of sequestration is a matter within the discretion of the lower court, particularly in the absence of evidence that any effort was made by the other state police officers to talk to the sequestered witness. *Commonwealth v. Turner*, 389 Pa. 239, 133 A. 2d 187. The present case presents no greater nor more important problem than the *Turner* case, and we cannot say, as did the Supreme Court in that case, that the lower court abused its discretion.

The ruling on the alleged prejudicial statement contained in the newspaper was also a matter within the discretion of the lower court. *Commonwealth v. Helwig*, 184 Pa. Superior Ct. 370, 134 A. 2d 694. We cannot say that it abused its discretion in this case, particularly in view of its direction to the jury to disregard anything it may have read about the case in the newspapers.

Lastly, fundamental error is argued with reference to the charge to the jury defining and referring to the possession of burglary tools.

After reading the charge on this point in its entirety, we discover no fundamental error. The charge clearly states, "The Commonwealth must establish . . . that he had possession of the tools, of burglary tools, that are described in this Act . . . as well as possession by the defendant with intent to use the tools for such felonious purpose." and "The intent to use the tools . . . for any of the felonious purposes set forth in the . . . act may be inferred from all the circumstances of the case." This was approved in *Commonwealth v. Clinton*, 391 Pa. 212, 137 A. 2d 463. However, in that case the facts did not justify its application, wherein it is

stated (p. 218), "The circumstances in the case at bar do not support a criminal intent." That is the distinction. In our present case at bar there is much evidence from which a criminal intent may be inferred.

A careful examination of the record has failed to disclose anything that could be construed as prejudicial against the rights of the defendants. They received a fair and impartial trial and we therefore conclude that the lower court did not err in refusing the motions in arrest of judgment or in refusing the motions for a new trial.

Judgments and sentences affirmed.