Commonwealth *v.* Silia, Appellant.

Submitted November 14, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Nicholas Silia, Jr.,* appellant, in propria persona.

*William Claney Smith,* and *Samuel Strauss,* Assistant District Attorneys, and *Edward Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., December 14, 1960:

In this appeal from the judgments and sentences of the Court of Quarter Sessions of Allegheny County and from the orders denying motions in arrest of judgment and for a new trial, the defendant-appellant, Nicholas Silia, Jr., had been charged with eleven offenses of false pretense, one of statutory rape, four of felonious rape, three of pandering, one of sodomy, one of violation of the Firearms Act and two of pointing firearms. During the trial and after hearing the Commonwealth's testimony he withdrew his pleas of not guilty of statutory rape and entered a plea of guilty. He was convicted of all charges except one of felonious rape.

On motions in arrest of judgment and for a new trial, the court en banc below sustained motions in arrest of judgment in ten of the eleven convictions of false pretense; sustained also similar motions in the three convictions of felonious rape; but denied mo-

tions in arrest of judgment and for a new trial in all the other convictions.

All the cases arose out of a situation in which Nicholas Silia, Jr., set up a bogus "Escort Service". The false pretense charge was based on his obtaining the sum of $50 from an applicant for employment in the Escort Service for the purpose of paying for a fidelity bond which was never obtained. The pandering convictions were based upon occurrences also connected with the so-called Escort Service in which it was charged that the defendant induced women to engage in acts of prostitution with one William Thompson. The firearms convictions arose out of actions in which the defendant possessed a luger pistol and pointed it at certain of the young ladies, employees of the Escort Service, in order to induce them to perform certain immoral acts. The sodomy convictions also were based on incidents involving him with some of the women employees in the Escort Service.

It is well settled that in order to constitute the offense of false pretense, Act of June 24, 1939, P. L. 872, §836, as amended, 18 PS §4836, there must be a false representation of an existing fact, a reliance on this false statement, the obtaining of the money as a result thereof, and the false representations must have been made with intent to defraud. *Com. v. Campbell,* 116 Pa. Superior Ct. 180, 176 A. 246 (1935). False pretense is defined in the law as the false representation of an existing fact. *Com. v. Gross,* 161 Pa. Superior Ct. 613, 618, 56 A. 2d 303 (1948).

The evidence of the Commonwealth established that the defendant represented that he was conducting a legitimate business; that he advertised for employees in his Escort Service; that each employee was required to tender with their application the amount of $50; that this was represented to the applicant as 50% of the cost of obtaining a bond which was required as a

condition of employment and that the defendant would pay the other 50%; that in addition to this testimony the applicant, Anthony Filardi, asked the name of the bonding company which was to write the bond; that this was given to him by the defendant as International Guaranty and Bonding Company of Newark, New Jersey, and that the evidence of the Commonwealth disclosed that such a company did not exist. This applicant, therefore, parted with his money in reliance on a false representation of an existing fact and the evidence is sufficient to sustain the conviction.

The defendant further contends that his conviction of violation of the Uniform Firearms Act cannot be sustained in the absence of proof by the Commonwealth that he did not have a license for the gun. This is, of course, without merit. *Com. v. Anderson,* 191 Pa. Superior Ct. 213, 156 A. 2d 624 (1959). If he had such a license it was incumbent on him to come forward with that proof.

The complaints of the defendant that the Commonwealth failed to prove that the gun was a firearm and the failure of the court below to instruct the jury as to the definition of a firearm are both equally without merit. It is enough to say that the record discloses that he carried a luger pistol concealed on and about his person; that he pointed this pistol at several young women in an effort to intimidate them; and that the luger pistol was introduced into evidence. There was no request by the defendant for any instructions to the jury as to the definition of a firearm and no exceptions were taken to the introduction of the gun into evidence. It is true that the defendant denied pointing the gun which clearly raised a question for the jury. These complaints were not raised in the court below and although we dismissed them, as being without merit, they are not properly before us. *Com. v. Mays,* 182 Pa. Superior Ct. 130, 126 A. 2d 530 (1956).

It is the contention of the defendant that the evidence is insufficient to sustain the conviction of pandering in that, since the girls involved did not personally receive money that they were not prostitutes. "Whoever . . . induces, persuades, encourages, inveigles or entices a female person to become a prostitute . . . is guilty of pandering." Act of 1939, P. L. 872, 18 PS §4513. President Judge GRAFF in his opinion for the court below disposes of this contention as follows: "We are clearly of the opinion that this position is without merit. Sec. 103 of the Act of June 24, 1939, P. L. 872, defines prostitution as 'the offering or using the body for sexual intercourse for hire'. In Commonwealth v. Stingal, 156 Pa. Superior Ct. 359, it is held that a person may be guilty of pandering though he limits his solicitation of a female to sexual intercourse for hire with but a single man, the Court there states upon Page 362 as follows: 'The gist of the offense is not alone the practice of prostitution but the spread of prostitution, and whether the female becomes debauched or not is unimportant in view of the emphasis upon punishing the promotion and expansion of the vicious evil'.

"The felony of inducing a female to become a prostitute is also completed in the using of enticing or persuasive language. There can be no doubt in this case but that the defendant did offer to William Thompson for sexual relations each one of the girls concerned in the foregoing indictments; that at that time he had them employed under his so-called 'Escort Service'; that each girl knew that her body was to be submitted to Thompson, for which he had paid money, and that such acts were committed; and that the defendant was present prior to the commission of the act, and persuaded and insisted upon such being done; and further, in the case of Judith McAuly, that additional money was demanded in her presence and with her

consent prior to engaging in such conduct. Under such circumstances it is plain that the bodies of the young women were submitted for hire, and it would be doing violence to the Act of Assembly to say that pandering was not committed simply because the money was not given to the victims in the first instance. We conclude that the contention of the defendant is without merit."

President Judge GRAFF also ably answers the complaint that the defendant's right to a fair trial was prejudiced because the two Commonwealth witnesses to the sodomy charge were not segregated as ordered by the trial court. "This contention relates to the alleged presence of Mary Lou Colpo in the Court Room at the time that F.B.I. Agent Thompson testified concerning an act of sodomy committed by the defendant upon her. It is first to be observed that the law is well settled that the Trial Judge has the power to permit sequestration of witnesses, and that it is a matter entirely within his discretion: Commonwealth v. Kravitz, 400 Pa. 198.

"The witness Thompson testified that the defendant made a statement to him to the effect that Mary Lou Colpo became ill during the perpetration of oral sodomy upon her, and as a consequence vomited. We have no recollection that Mary Lou was present in Court at the time of such testimony. Even if she was present, we cannot see how anything was prejudicial to the defendant. For the reason that the defendant himself in the main was conducting the trial, we were over-emphasizing our desire to see that this trial was fair. Clearly the defendant's contention is without merit." See also: *Com. v. Turner*, 389 Pa. 239, 133 A. 2d 187 (1957); *Com. v. Breslin*, 194 Pa. Superior Ct. 83, 165 A. 2d 415.

It should be noted that the defendant insisted upon conducting the trial as his own counsel. This, despite the fact that experienced counsel was provided for him.

He did permit counsel to sit with him during the course of the trial and render advice and engage to a certain extent in the actual trial. It should also be noted that because of this situation the trial judge extended greater consideration to this defendant and permitted greater latitude than if counsel were conducting the case.

Finally the defendant complains that the court below erred in permitting consolidation of all the indictments for trial. With the exception of statutory rape, to which he pleaded guilty, all the charges grew out of circumstances involved in the establishment of his Escort Service. Again, this question of consolidation was not objected to at the time of the trial, nor was it raised in the motions for a new trial or argument before the court en banc. Questions that were not raised in the lower court will not be considered on appeal. *Com. v. Mays,* supra. However, we have held that consolidation is largely a matter for the exercise of the sound discretion of the trial court. *Com. v. Russo,* 177 Pa. Superior Ct. 470, 111 A. 2d 359 (1955), where what they said at pages 478, 479, is particularly applicable to the facts in these cases.

"It is the settled rule that the consolidation of indictments charging separate and distinct offenses is largely a matter within the sound discretion of the trial judge and where the indictments are closely related his exercise of discretion will not be reversed unless it is clearly shown that an appellant has been prejudiced thereby. Commonwealth v. Lehman, 166 Pa. Superior Ct. 181, 70 A. 2d 404; Commonwealth v. Kaysier, 166 Pa. Superior Ct. 369, 71 A. 2d 846; Commonwealth v. Schultz, 168 Pa. Superior Ct. 435, 79 A. 2d 109. And under the modern practice related felonies and misdemeanors may be consolidated for trial before the same jury. Here there was positive testimony before the committing magistrate of the solicita-

tion of sodomy, as against testimony so softened before the grand jury as to fail to make out a prima facie case against any of the sex offenders charged with crime. The consolidation was especially appropriate in these cases for the proofs followed the same pattern and were all interrelated. Evidence establishing the charge of obstructing public justice in each of the cases against a defendant would be admissible in the trial of all of the others to show that the acts were intentional and willful, not accidental; to prove motive; to show a plan, design or scheme, and a common purpose and to rebut any inference of mistake. Goersen v. Commonwealth, 99 Pa. 388; Commonwealth v. Chalfa et al., 313 Pa. 175, 169 A. 564." Most certainly in the absence of objection the court below did not abuse its discretion in permitting the trial to continue on all the indictments involved.

The general complaints of the defendant that the prosecutor knowingly made incorrect statements and inflammatory remarks that prejudiced his right to a fair trial are well answered by President Judge GRAFF as follows:

"The defendant next contends that the prosecutor made incorrect and inflammatory remarks in the presence of the jury, of such prejudicial character as to prevent him from having a fair trial. As we recall, there were no remarks made by the Assistant District Attorney which were unjustified by the evidence. The contention is without merit.

"The acts of the defendant in conducting his 'Escort Service' were false, fraudulent, and vicious, from beginning to end. They constituted a conduct of studied gross immorality and deceit, tending to corrupt the morals of young women, and fraudulently obtain money in furtherance of this plan. Such conduct is to be strictly condemned by the Court. It is only to be

overly fair to the defendant that we sustained the motion in arrest of judgment as to certain indictments."

Judgments affirmed.