## Commonwealth *v.* Mitchell, Appellant.

22

Submitted June 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Margaret H. Poswistilo,* Assistant Public Defender, for appellant.

*Salvador J. Salazar,* Assistant District Attorney, and *Charles H. Spaziani,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., March 31, 1975:

On June 26, 1973, appellant was convicted by a jury of cheating by false pretenses in violation of the Act of June 24, 1939, P.L. 872, §836, as amended, 18 P.S. §4836. On this appeal he contends that the evidence was insufficient, that the charge to the jury was unfair, and that there was a fatal variance between the allegations of the indictment and the proof.

On October 31, 1972, Pennsylvania State Trooper James J. Margle was on duty as an undercover narcotics agent in Easton. He was a passenger in an automobile when he observed appellant and motioned to him. When appellant approached the automobile the driver asked him, "Are you holding?" It was testified that "holding" meant, "Do you have any drugs?" Appellant motioned to the driver to drive to the other side of the traffic circle. There the trooper asked appellant, "Do you have any skag?" It was testified that "skag" meant "heroin." Appellant pointed to an alleyway and said, "Park there." The driver complied, and in a few minutes appellant arrived and asked, "How many do you want to do?" It was testified that this meant, "How many bags of heroin do you want to buy?" The trooper testified that he answered, "I said I wanted to do two from him, two bags of heroin." Appellant did not reply but took out of his pocket and handed the trooper two small tin foil packets, for which the trooper gave appellant twenty dollars. When subsequent analysis revealed that the packets contained quinine, appellant was prosecuted for cheating by false pretenses.

I

Appellant's first contention is that the evidence was insufficient.

The Act of June 24, 1939, *supra*, 18 P.S. §4836, provides that: "Whoever, by any false pretense . . . obtains from any other person any . . . money . . . with intent to cheat and defraud any person of the same . . . is guilty of a felony . . ."[1] In *Commonwealth v. Bomersbach*, 224 Pa. Superior Ct. 40, 42, 302 A.2d 472, 473 (1973), citing *Commonwealth v. Silia*, 194 Pa. Superior Ct. 291, 166 A.2d 73 (1960), it is stated:

> "In order to sustain a verdict on an indictment charging false pretenses, the Commonwealth must show: (1) a misrepresentation of an *existing fact;* (2) reliance by the victim on the false statement; (3) the obtaining of money as a result thereof; and (4) an intent to defraud."

In deciding whether the Commonwealth made this showing we must regard the evidence in the light most favorable to the Commonwealth, giving it the benefit of all reasonable inferences. *Commonwealth v. Minor*, 227 Pa. Superior Ct. 343, 322 A.2d 717 (1974) ; *Commonwealth v. Herman*, 227 Pa. Superior Ct. 326, 323 A.2d 228 (1974).

The first question is whether the evidence shows a misrepresentation of an existing fact. If appellant, when he gave the trooper the two packets of quinine, had said, "Here are two bags of heroin," there could be no argument. In fact appellant said nothing when he gave the trooper the packets. However, a misrepresentation may be by conduct as well as by words. *Commonwealth v. Dougherty*, 84 Pa. Superior Ct. 319, 321 (1925). Appellant's conduct was to give the trooper the packets after several conversations: The driver asked, "Are you holding?" The trooper asked, "Do you have any skag?" And when appellant asked, "How many do you want to do?" the trooper replied, "I want to do two." Appellant argues that he did not know what these expressions meant. The

---

1. This crime is now theft by deception. The Crimes Code, 18 Pa. C.S. §3922 (1974).

jury might have accepted this argument, but it is hardly surprising that it did not. Appellant must have understood that he was being asked to make a sale, or why would he have accepted twenty dollars? And when appellant's secretive manner is considered it is evident that he also must have understood that "skag" did not refer to some innocent substance. The jury might well have asked itself, "If he didn't know what 'skag' meant, why didn't he ask?"

The next question is whether the evidence shows that the trooper relied on appellant's misrepresentation that the two packets contained heroin. The issues presented by this question are novel, and present some difficulty.

Appellant points to the trooper's testimony, "My purpose [in undercover narcotic work] is to buy any type of drug and then turn it over to the proper individuals in our chain of command." From this appellant reasons that the trooper did not care what kind of drug he bought: if he bought heroin, a prosecution under The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, §1, 35 P.S. §780-101, *et seq.*, would follow; if he bought some innocent substance, a prosecution for cheating by false pretenses would follow. Hence, appellant concludes, the trooper's only reliance was on the fact of resulting prosecution, not on the fact that what he had bought was heroin. This reasoning is appealing in its ingenuity, but we have concluded that it is fallacious.

Interpreting the facts in the light most favorable to the Commonwealth, as we must, *Commonwealth v. Minor, supra; Commonwealth v. Herman, supra,* we may infer that the jury decided that the trooper did not mean that his purpose was "to buy *any* type of drug" but "any type of *illegal* drug," which is to say that he did care what he was buying: He thought he was buying heroin, and he relied on appellant's misrepresentation that he was, because he intended to initiate a Controlled Substance Act

prosecution; it was not until he discovered that he had been cheated that the idea of a false pretense prosecution arose.[2]

This interpretation of the trooper's testimony does not, however, fully turn the force of appellant's argument. In the ordinary case of cheating by false pretenses the victim buys something for his own satisfaction, and his expectation of satisfaction is disappointed. Thus, a drug addict might pay twenty dollars for two bags of heroin in the expectation of giving himself a "fix," only to be disappointed when he finds that what he has bought is quinine. Here, the trooper had no intention of using what he bought to give himself a fix. Was he therefore in fact relying on appellant's misrepresentation that the packets contained heroin?

The answer to this question depends upon how one defines "reliance." As we have seen, the trooper did engage in a certain kind of reliance: he expected to be able to initiate a Controlled Substance Act prosecution. What appellant would have us do is hold that this kind of reliance will not support a prosecution for cheating by false pretenses. There is, however, no reason for such a decision. It is true that the kind of reliance the trooper engaged in was different from the kind of reliance that a drug addict would have engaged in; but this does not mean that the trooper was not cheated; it only means that appellant was surprised.

The fallacy in appellant's argument is to define reliance in terms not only of his victim's state of mind but his own. No doubt appellant was relying on the trooper's representations that he was a drug addict parting with some of his own money for a fix. What matters, however, is not appellant's but the trooper's state of mind. It is enough that the trooper was cheated. The fact that he

---

2.  A list of controlled substances appears in Section 4 of The Controlled Substance, Drug, Device and Cosmetic Act, *supra* 35 P.S. §780-104. Quinine is not listed.

was cheated of a prosecution instead of a fix is not a fact of which appellant may take advantage.

The next question is whether the evidence shows that appellant obtained money as a result of his misrepresentation that the packets contained heroin. However, this need not be discussed, for given our conclusion that there was such a misrepresentation, appellant does not argue the point.

The last question is whether the evidence shows an intent to defraud. The jury might have found that the evidence did not show such an intent. For example, it might have found that appellant did not understand the meaning of "skag." Or it might have reasoned that appellant bought the quinine from a supplier who misrepresented to him that it was heroin, and that when he sold it to the trooper he believed he was selling heroin. However, simply because these were possible findings the jury was not obliged to make them. It could at least equally readily choose to believe that appellant knew that what he was selling was not heroin but quinine, in which case a conviction would be proper. It is plain that this was the jury's finding, and we shall not second guess it. *Commonwealth v. Lawrence*, 428 Pa. 188, 236 A.2d 768 (1968); *Commonwealth v. Rhome*, 222 Pa. Superior Ct. 4, 5-6, 292 A.2d 437 (1972).

Accordingly, as all the elements of cheating by false pretenses were proved, appellant's contention that the evidence was insufficient is denied.

## II

Appellant's second contention is that the trial judge erred in his charge to the jury in specifically refusing to state appellant's view of the evidence pertaining to the element of reliance by the victim as that view was presented in defense counsel's closing argument to the jury.[3]

---

3. Appellant presented no evidence at trial. As a result, the opening argument of appellant's counsel became his closing argument.

In *Commonwealth v. Thacker,* 328 Pa. 402, 405, 194 A. 924, 926 (1937), a trial judge's duty with respect to closing argument was described as follows:

"The accused is not only entitled to be heard by counsel, but also to have the arguments of his counsel considered by the jury in passing upon the evidence. Any material abridgment or interference with this right constitutes reversible error: *Stewart v. Commonwealth,* 117 Pa. 378. Accordingly it is well settled that a trial judge may not instruct the jurors that they are not to consider the arguments of counsel: *Com. v. Polichinus,* 229 Pa. 311, or refer to such arguments contemptuously: *Com. v. Brown,* 309 Pa. 515. However, as we said in *Com. v. Polichinus,* supra (p. 314): 'A trial judge may properly instruct the jury that the arguments of counsel are not binding upon them, and that they are only to be guided by such arguments in so far as they are supported by the evidence and appeal to their reason and judgment.' "

In discharging this duty the judge is not bound to review the defendant's theory of the case as detailed in the closing arguments. Rather, the circumstances of a particular case will determine what comment on the argument is appropriate. Here, the presentation of the evidence took a very short time.[4] The court's review of the evidence was correspondingly short. This was entirely in order; a lengthy review was not necessary. The charge of the court must be considered in its entirety. *Commonwealth v. Thompson,* 321 Pa. 327, 184 A. 97 (1936). The charge here was fair. It stated the law accurately, and emphasized that the jury must consider both sides of the case and the arguments of both counsel.[5]

---

4. The trial began at 11:28 a.m. A noon recess was declared from 11:57 until 1:40 p.m. Closing arguments were heard from 1:43 until 2:20 p.m. The charge was completed and the jury began to deliberate at 2:56 p.m.

5. In concluding the charge the judge stated: The arguments of counsel and the contentions they submit to you are an important

"It is only in exceptional instances, where, for example, it plainly appears that the charge is misleading, or that it has a tendency to withdraw the attention of the jury from material evidence, or to magnify the importance of the proofs on one side and belittle those on the other, that a trial judge will be reversed for inadequacy of charge in reviewing the evidence." *Commonwealth v. Colandro*, 231 Pa. 343, 356-357, 80 A. 571 (1911).

We therefore find appellant's second contention to be without merit.

### III

Appellant's third contention is that there was a fatal variance between the allegations of the indictment and the proofs presented at trial. He is not, however, in a position to make this contention.

It is true, as appellant notes, that the allegation of the indictment is that appellant represented to the trooper "that he would obtain certain narcotics." The issue presented by that allegation is, however, not an issue of proof but of pleading. It is at least arguable that as a pleading the indictment was defective in that it alleged not a misrepresentation of existing fact but a false promise of future conduct. *Commonwealth v. Becker*, 157 Pa. Superior Ct. 169, 30 A.2d 195 (1943) ; *Com-*

---

part of the case. They should be considered by you thoroughly. But remember that the contentions of counsel are not the testimony and the evidence in the case. It is for you to decide what the testimony and evidence shows, it is for you to decide what contentions of counsel you find acceptable and what you do not. You are not bound by them. You should give them consideration but you are not bound to accept any contention as presented to you by counsel. The very function you have as a jury is to weigh the evidence and to decide what you believe the facts show, and to make your decision as to whether or not you are convinced beyond a reasonable doubt by the evidence in this case. So look to the contentions of both sides and then you decide what you believe the testimony and evidence shows.

*monwealth v. Johnson,* 104 Pa. Superior Ct. 96, 157 A. 625 (1931). It is, however, too late for appellant to make this argument. The Act of March 31, 1860, P.L. 427, §11, 19 P.S. §431, provides that: "Every objection to any indictment for any formal defect on the face thereof, shall be taken by demurrer, or on motion to quash such indictment, before the jury shall be sworn, and not afterward. . . ." *And see Commonwealth ex rel. Banks v. Myers,* 423 Pa. 124, 128, 222 A.2d 880, 882 (1966); *Commonwealth ex rel. Jenkins v. Ashe,* 341 Pa. 334, 336, 19 A.2d 472, 473 (1941). Here, appellant neither demurred to nor moved to quash the indictment.

Appellant did demur to the evidence, but that raised the question of whether the evidence was sufficient, and as has been seen, it was. When demurring to the evidence, appellant's counsel did not suggest to the trial judge that the evidence did not conform to the allegations of the indictment. Had he done so, the judge could have considered whether to permit an amendment of the indictment, or whether after all, the indictment had not given appellant fair notice, and the proof come close enough. Assuming there was a variance, it "cannot be taken advantage of by [appellant's] motion in arrest of judgment." *P.L.E.* Criminal Law, Vol. 10 A, §804.

The judgment of sentence is affirmed.

CERCONE, J., concurs in the result.